[Civ. No. 47314. Second Dist., Div. Four. Mar. 31, 1977.]

HAROLD E. COLE, Plaintiff and Appellant, v.
LOS ANGELES COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Daniel M. Luevano, Rosalyn M. Chapman, John E. McDermott and Richard A. Paez for Plaintiff and Appellant.

John H. Larson, County Counsel, and Ronald J. Selgarth, Deputy County Counsel, for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—Petitioner appeals from a judgment granting in part his petition for a writ of mandate, and from a later order discharging the peremptory writ. We reverse the orders with directions.

From July 1, 1969, until the events herein involved, petitioner was employed by respondent college district as a police officer assigned to security duty. On August 23, 1972, petitioner was served with two notices of unsatisfactory service and was notified that he was suspended from duty and would be discharged as of September 14, 1972. On August 29, 1972, petitioner's immediate superiors filed with respondent board a statement of charges, based on the earlier notices. On September 13, 1972, respondent board, without hearing, voted to discharge petitioner. Thereafter, he filed with respondent personnel commission his appeal from the order of discharge. The board appointed a hearing officer who, after an eight-day hearing, found ten of the charges alleged against petitioner to be supported by the evidence and sustained the discharge.[1] On December 21, 1972, the personnel commission upheld the order of dismissal.

---

[1] On August 22, 1972, a notice of unsatisfactory service for the period beginning October 21, 1970, and ending July 31, 1972, indicating causes of discourteous treatment of the public or of fellow employees, false or misleading information on application forms, frequent unexcused absence or tardiness, inattention to or dereliction of duty, insubordination, inefficiency, and willful and persistent violation of the provisions of rules, regulations, or procedures adopted by the board of education, was issued to Mr. Cole. The above notice was issued to Mr. Cole based on the following incidents:

1. On November 3, 1970, Officer Cole telephoned Officer Skipper, college police officer and told him that he, Officer Cole, planned to take his vacation effective immediately. Officer Cole failed to obtain approval from either Captain Monteverde, captain of college police, or Mr. William Mann, dean of education services, as required. Officer Cole was aware that such approval should have been obtained.

2. Given below is the record of Officer Cole's tardiness for the period beginning November 10, 1971, and ending July 17, 1972. During this period, Officer Cole was tardy approximately fifty-seven (57) times. The range of tardiness was from five (5) minutes to two (2) hours and forty-five (45) minutes.

| | | |
|---|---|---|
| November 10, 1971 | February 21, 1972 | June 9, 1972 |
| December 2, 1971 | February 22, 1972 | June 19, 1972 |
| December 3, 1971 | February 24, 1972 | June 20, 1972 |
| December 9, 1971 | February 25, 1972 | June 21, 1972 |
| December 10, 1971 | March 16, 1972 | June 22, 1972 |
| December 11, 1971 | March 17, 1972 | June 23, 1972 |
| December 16, 1971 | March 23, 1972 | June 24, 1972 |
| December 30, 1971 | March 27, 1972 | June 29, 1972 |
| January 6, 1972 | March 28, 1972 | June 30, 1972 |
| January 7, 1972 | March 31, 1972 | July 3, 1972 |
| January 8, 1972 | April 3, 1972 | July 4, 1972 |
| January 13, 1972 | April 14, 1972 | July 6, 1972 |

Pursuant to section 1094.5 of the Code of Civil Procedure, petitioner sought a writ of mandate to reverse the order of dismissal. After a hearing, and exercising its independent judgment (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]), the trial court found that, of the ten charges found to be true by the hearing officer, three were not sustained by the

| | | |
|---|---|---|
| January 14, 1972 | April 17, 1972 | July 7, 1972 |
| February 1, 1972 | April 23, 1972 | July 10, 1972 |
| February 3, 1972 | April 24, 1972 | July 11, 1972 |
| February 4, 1972 | May 7, 1972 | July 12, 1972 |
| February 15, 1972 | May 15, 1972 | July 13, 1972 |
| February 16, 1972 | May 23, 1972 | July 14, 1972 |
| February 18, 1972 | June 1, 1972 | July 17, 1972 |

6. a. On January 11, 1971, Officer Cole made unauthorized use of college paper, carbon paper, and typewriters for his personal use.

b. When Captain Monteverde attempted to counsel Officer Cole on this matter, Officer Cole used profane and abusive language toward Captain Monteverde. Officer Cole indicated that he had no intention of performing his assigned duties properly as he felt that it was virtually impossible for the district to dismiss him.

7. a. On January 26, 1971 and January 29, 1971, Officer Cole used office typewriters for his personal use in violation of direct orders.

b. During the time Officer Cole was using the typewriters, he was not performing his duties.

8. On February 1, 1971, Officer Cole was assigned to guard the registration cashier in the auditorium. Officers Holts, Roundtree, and Skipper, all college police officers, observed Officer Cole reading and writing, and also observed that he was located approximately 50 feet from, and out of sight of, the cashier. From that position and his apparent attention to his reading and writing, it was determined that Officer Cole was not providing proper security.

14. On November 25, 1971, Officer Cole failed to perform his duties by allowing a number of security hazards to exist.

15. On January 7, 1971, Officer Skipper tried to contact Officer Cole to have him and Officer Janosco, college police officer, respond to a call from Aide Rickmon. Aide Rickmon had requested assistance with two suspicious individuals loitering around the cashier's booth in the registration area. Officer Cole did not respond to "beepers" at 11:08 a.m. and 11:20 a.m., nor to "bells" at 11:30 a.m. Officer Janosco was forced to handle the potentially dangerous situation alone.

17. On April 21, 1972, Officer Cole was assigned to relieve Officer Jones on an assignment to protect Mr. Giblin, an instructor whose life had been threatened. Officer Cole failed to carry out this assignment in that Mr. Giblin and Mr. Walter Alerich, a coordinator, could not find Officer Cole approximately 30 minutes after he had relieved Officer Jones.

28. On June 24, 1972, Officer Cole was observed at various times between 10:15 a.m. and 10:50 a.m. reading a newspaper instead of performing his assigned duties. Officer Cole was also observed using the telephone in the dean of instruction's office for his personal use between 11:05 a.m. and 11:15 a.m. At 12:05 p.m. Officer Cole was absent from his assigned duty post. Officer Cole returned at 12:20 p.m.

29. On July 20, 1972, at approximately 7:25 p.m., Officer Cole was ordered by the officer-in-charge to drive to Aircraft Annex to make a security check. Instead of doing as directed, Officer Cole remained on the main campus without notifying the officer-in-charge. Officer Cole was writing personal notes when found by the officer-in-charge.

evidence but that seven were so sustained.[2] It issued a peremptory writ of mandate, directing the personnel commission to vacate its decision and to reexamine the matter of penalty.[3] After referring the matter to the hearing officer for advice, but after a hearing at which petitioner appeared by counsel, the commission again sustained the dismissal. Petitioner objected to the trial court to that disposition. After receiving declarations from members of the commission, the trial court overruled petitioner's objections and entered its order discharging the peremptory writ.

Petitioner has appealed from the judgment granting the limited peremptory writ and from the order overruling his objections to the return to that writ. For the reasons set forth below, we reverse both the judgment and the order.

I

It is admitted in the briefs that the procedure followed by respondents, leading to petitioner's ultimate dismissal, were in accord with the provisions of sections 13740 through 13746 of the Education Code. It is also admitted that that procedure did not conform to the procedural requirements mandated by the Supreme Court in 1975 in *Skelly* v. *State Personnel Bd.,* 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. Petitioner contends that *Skelly* should be given retroactive effect, thus invalidating the entire proceeding against him.

On November 30, 1976, the Supreme Court decided the case of *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306]. That case held that *Skelly* should be given only a limited retroactive effect. It affirmed the dismissal therein involved but directed that Barber be given his pay for the period after his suspension to and including the date when a formal hearing was held in his

---

[2]The charges found by the trial court not to be sustained on the record were charges C-1, C-2 and C-28, leaving charges C-6, C-7, C-8, C-14, C-15, C-17 and C-29 found to be sustained.

[3]"1. A peremptory writ of mandamus issue under the seal of this Court remanding the proceedings to Respondent Personnel Commission and commanding Respondent Personnel Commission to set aside its decision dismissing Petitioner Harold E. Cole as a permanent classified campus police officer and to reconsider its action in light of this Court's findings that charges C-1, C-2 and C-28 are not supported by a preponderance of the evidence, and requiring said Respondent Commission to determine in its discretion what discipline should be imposed for the charges found to be sustained by a preponderance of the evidence."

case. ■ Applying that rule to the case at bench, petitioner is entitled to pay for the period beginning on September 14, 1972, and ending on December 21, 1972, less any credits chargeable against him. We reverse the judgment and order for the sole purpose of permitting the trial court, after such hearing as it may deem necessary, to provide for such monetary relief.

## II

■ Petitioner's contention, throughout this case, has been that the charges against him were motivated by spite on the part of his fellow officers and his superiors because he had testified, in 1971, in the case of Martin v. Los Angeles Community College District (Los Angeles Superior Court case No. C-25402) that his fellow officers were guilty of certain illegal actions. Contrary to petitioner's contention here, based on *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480], the hearing officer did admit evidence in support of that position and both the commission and the trial court were aware of that position and of the evidence relied on by petitioner. However, the trial court expressly found that any such motivation had not affected the dismissal order. The trial court found as follows:

"10. That during said eight-day hearing before the hearing officer of the Personnel Commission of Respondent, Petitioner introduced documents and other evidence to demonstrate that the true reason for his discharge was not the charges set forth in the Statement of Charges but official dissatisfaction with Petitioner among his administrative superiors because of unfavorable testimony Petitioner had given in civil litigation (Martin v. Los Angeles Community College District, pending in the Los Angeles Superior Court) instituted against some of Petitioner's superiors and fellow officers; that said evidence was substantively received by the hearing officer and, pursuant to stipulation of counsel, was deemed relevant only to charges based upon events occurring after December, 1971.

"11. That the Personnel Commission duly considered the contentions and evidence set forth by Petitioner as described in Finding of Fact 10, hereinabove, and accordingly, made findings in its written decision that, in addition to the charges set forth in the Statement of Charges, Petitioner's administrative superiors had been motivated to discredit Petitioner because of Petitioner's testimony given in said Martin case but that in spite of said motivation Petitioner's discharge was supported and

sustained on the basis of thirteen charges (C-1, 2, 6, 7, 8, 14, 15, 17, 24, 25, 26, 28, 29) of which eight charges (C-2, 15, 17, 24, 25, 26, 28, 29) were based upon events occurring after December, 1971.

"12. The preponderance of the evidence is that Petitioner's action in giving evidence in the Martin case was one of the motives of Respondent's administrative superiors in bringing charges against Petitioner, and that such motives must also be attributed thereby to the Board of Trustees of Respondent by reason of their delegation in fact of the power of discharge to the administrative superiors. However, the Personnel Commission and its hearing officer had no such motivation, and the decision of the Personnel Commission was based solely on the merits of . the charges made against Petitioner.

"13. That the Personnel Commission of Respondent exercised total independence from the Board of Trustees in reaching its decision to sustain Petitioner's discharge and was not in any way prejudiced against Petitioner or motivated to discredit Petitioner."

Based on those findings, the trial court made its conclusions of law as follows:

"The decision of the Personnel Commission was untainted by the improper motivation which was one of the causes of the discharge action taken by the District and was based on an objective review of the evidence. Such conclusion makes irrelevant to this decision the motivation of Petitioner's superiors in causing the discharge and limits the issues on this review to the question of whether the preponderance of the evidence supports the decision as to the charges made."

We find nothing in the record to permit us to hold those findings and that conclusion improper. It is the bias of the tribunal deciding a case, not the bias of the person instituting the proceeding that is important. Insofar as the alleged bias could be urged as affecting the credibility of the witnesses against petitioner, we are bound by the factual findings of the tribunals below, who were not biased in their weighing of the evidence.[4]

---

[4]In that connection, the hearing officer stated: "That bias and prejudice has been carefully considered throughout the review of the evidence."

## III

 In his attack on the return to the writ of mandate, petitioner contended that he had been denied due process because he had not been advised of the action of the personnel commission in referring the matter of penalty back to its hearing officer for a recommendation, and had received only brief notice of the meeting at which the commission voted to affirm its original order of dismissal. In that connection, the trial court stated, in its minute order overruling petitioner's objections:

"Normally, the short notice given here would indicate lack of due process in the presence of prejudice, but no prejudice is shown. Petitioner made an extensive written argument and was apparently given an opportunity to make an oral argument as well. No evidence was taken or necessary, since the matter was decided on the record."

## IV

Section 13001.5 of the Education Code provides as follows:

"Materials in personnel files of employees which may serve as a basis for affecting the status of their employment are to be made available for the inspection of the person involved.

"Such material is not to include ratings, reports, or records which (1) were obtained prior to the employment of the person involved, (2) were prepared by identifiable examination committee members, or (3) were obtained in connection with a promotional examination.

"Every employee shall have the right to inspect such materials upon request, provided that the request is made at a time when such person is not actually required to render services to the employing district.

"Information of a derogatory nature, except material mentioned in the second paragraph of this section, shall not be entered or filed unless and until the employee is given notice and an opportunity to review and comment thereon. An employee shall have the right to enter, and have attached to any such derogatory statement, his own comments thereon. Such review shall take place during normal business hours, and the employee shall be released from duty for this purpose without salary reduction."

■ Petitioner's complaint is that his time cards were received in evidence against him without having been placed in his personnel file with an opportunity for him to comment thereon. We do not read that section as applying to the kind of routine record, speaking for itself, that is involved here. Petitioner points to no pertinent data other than his time cards that were received in alleged violation of section 13001.5. In addition, we agree with the trial court's finding:

"Factual material containing the bulk of the charges against Petitioner was not contained in personnel files of Respondent which were made available for Petitioner's review pursuant to Section 13001.5, Education Code. It is true that the only district personnel file Petitioner was allowed to view on June 6, 1972, contained no derogatory information. It is found that the above circumstance did not prevent Petitioner from obtaining a fair hearing by the Personnel Commission of the charges against him."

V

■ Finally, petitioner contends that dismissal was such an excessive penalty for the charges proved against him as to constitute an abuse of discretion subject to being reversed by this court. We can see no abuse of the discretion granted to the personnel commission. We agree with the statement of the hearing officer on that point:

"It is also clear that appellant thought that he was being subjected to unfairly close scrutiny, was receiving an unfairly large share of bad assignments and an unfairly small share of opportunities to work overtime assignments. Appellant attributes some of his conduct to the feeling of discontent, a feeling of a need to be self protective and a dissatisfaction with his supervisors.

"The question which is finally tendered is whether an employee who has turned in a demonstrably poor performance over a substantial period should be forgiven and retained because he may have a legitimate basis for grievance against his supervisors.

"While it might be appropriate for the employer to overlook some discourtesies and some abrasive conduct resulting from the friction of the employee and his supervisor, under such circumstances this is not a basis upon which willful insubordination and open job neglect can be excused."

The judgment, and the order appealed from, are reversed for such further proceedings as may be necessary to grant to petitioner the monetary relief discussed under rubric I of this opinion. Neither party shall recover costs on this appeal.

Dunn, J., and Jefferson (Bernard), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 9, 1977. Bird, C. J., and Tobriner, J., of the opinion that the petition should be granted.