*96
 
 Opinion
 

 NOTT, J.
 

 Petitioner, Pomona Valley Hospital Medical Center (hereafter Pomona Valley) seeks a writ of mandate directing the superior court to set aside its order granting the motion of real party, Dr. Paul Bressman, to take the deposition of Dr. Frederick Knudsen and to augment the record with his testimony.
 

 I. Factual and Procedural History
 

 When Bressman joined Pomona Valley’s medical staff in 1983, he was a member of the Hauch Medical Clinic (Hauch), and was the only surgeon providing vascular surgical care for the patients of that group.
 

 In 1990, Knudsen was president of the Pomona Valley medical staff and a vascular surgeon. On April 24, 1990, Knudsen suspended Bressman’s privileges to practice medicine at Pomona Valley. Bressman requested and received a full medical staff executive committee (MEC) review. The MEC upheld the suspension, and determined that an investigation of Bressman’s performance at the hospital should be conducted by an ad hoc investigative committee in order to make a recommendation regarding Bressman’s then pending 1990 medical staff reappointment application. The investigative committee recommended that Bressman’s reappointment application be denied. On August 16, 1990, the MEC adopted the investigative committee’s recommendation. On August 20, 1990, Knudsen advised Bressman in writing that the MEC had adopted the ad hoc investigating committee’s recommendation that Bressman’s 1990 reappointment application be denied.
 

 On September 5, 1990, Knudsen advised the MEC that in August 1990, he and his partners had agreed to contract with Hauch for the purpose of serving as non-exclusive providers of surgical services on behalf of the clinic. Knudsen concluded that as a result, he would be unable to discharge any further duties that might be delegated to him with respect to the Bressman matter, and asked that his responsibilities be transferred to Dr. Duane W. Styles, the medical staff’s president-elect.
 

 On September 11, 1990, an emergency MEC meeting was held. Knudsen was not present. After distribution of Knudsen’s memorandum requesting a transfer of duties to Dr. Styles, the committee discussed what, if any, implications might be associated with Knudsen’s new contractual relationship with Hauch. The MEC voted to grant Knudsen’s request for a transfer of responsibilities, and voted that nothing with respect to Knudsen’s new contractual arrangement with Hauch had “anything whatsoever to do” with
 
 *97
 
 the reasons underlying the full executive committee’s April 30,1990, action upholding the April 24, 1990, summary suspension of Bressman’s privileges, or with the MEC’s August 16, 1990, recommendation that Bressman’s reappointment application be denied. The MEC therefore declined to modify, in any fashion, its April 30, 1990, and August 16, 1990, recommendations.
 

 On September 17, 1990, Dr. Styles advised Bressman in writing of Knudsen’s transfer request, and of the MEC’s actions with respect to Knudsen’s notification concerning his contract with Hauch. On that same day, Bressman submitted a written request for a judicial review committee (hereafter JRC) hearing to review the MEC’s decisions to uphold the suspension and to deny his reappointment application.
 

 The hearings before the JRC began on November 14, 1990, and ended, after 19 sessions, on January 20, 1993. On February 18, 1993, the JRC upheld the recommendation to terminate Bressman’s medical staff privileges. Bressman appealed the denial of his reapplication for staff privileges to Pomona Valley’s board of directors.
 

 Bressman claimed, among other things, that he had not received a fair administrative hearing because the JRC was not composed of impartial outside physicians, he was denied the representation of legal counsel, and of the right to voir dire the physicians, and that the MEC was improperly allowed to add a new charge to the list of original charges.
 

 The appellate panel—which had been appointed by the board of directors —concluded, among other things, that “no procedural improprieties occurred in connection with . . . Bressman’s hearing before the [JRC], and that he was
 
 not
 
 denied his right to a fair proceeding.” The panel recommended that the decision of the JRC be confirmed in all respects. The board of directors adopted in its entirety the appellate panel’s recommendation. Bressman then filed a Code of Civil Procedure section 1094.5
 
 [1]
 
 administrative mandamus action to obtain judicial review of the final administrative order and findings.
 

 Bressman alleged he had been denied a fair administrative hearing because he was denied legal representation during the JRC proceedings, and because “[t]he entire case of the JRC was fostered by Frederick Knudsen, M.D., who was the President of the Medical Staff of [Pomona Valley] and a
 
 *98
 
 direct economic competitor of [Bressman], who stood to receive a direct financial gain to his group after [Bressman’s] surgical privilege^] were summarily suspended. The [MEC] then approve[d] . . . Knudsen’s action within five (5) days. . . . Knudsen and his group [contacted Hauch, Bressman’s medical group] even before specific charges [were] presented against [Bressman], By virtue of . . . Knudsen’s executive action, he [was] able to take over [Bressman’s] practice, before [Bressman had] even a chance to defend himself.”
 

 Pomona Valley answered Bressman’s allegation that he was denied legal representation as follows: “[Pomona Valley] admits that the JRC voted to deny legal representation to either [Bressman] or the Medical Staff at any of the sessions held by the JRC; however, [Pomona Valley] specifically denies that said vote in any way compromised [Bressman’s] right to a fair hearing. [Pomona Valley] affirmatively alleges that the JRC exercised the discretion assigned to it by the Medical Staff Bylaws which is consistent with the law of this land in determining that there would be no legal counsel during the actual JRC hearings.”
 
 [2]
 

 With respect to the allegations concerning Knudsen, Pomona Valley answered as follows: “[Pomona Valley] denies that the JRC had any case that could have been fostered by anyone. [Pomona Valley] denies that the
 
 *99
 
 entire case of the Medical Staff was fostered by Dr. Frederick Knudsen. [Pomona Valley] admits that at some point in time Dr. Knudsen was the president of the Medical Staff. [Pomona Valley] admits that Dr. Knudsen was a competitor of [Bressman], however, states that the phrase ‘direct economic competitor of [Bressman] who stood to receive a direct financial gain to his group after [Bressman’s] surgical privileges were summarily suspended’ is vague and ambiguous and that [Pomona Valley] has insufficient information to either admit or deny and on that basis [Pomona Valley] denies said allegations. [Pomona Valley] also does not understand the sentence regarding the Medical Executive Committee’s approval of Dr. Knudsen’s actions within five (5) days and on that basis denies said allegations. [Pomona Valley] has insufficient information to either admit or deny and does not understand the remaining allegations . . . and on that basis denies them. [Pomona Valley] further affirmatively alleges that no issues regarding Dr. Knudsen and his involvement in the case have been preserved on the appeal below and as such all such issues have been waived by [Bressman]; and his failure to exhaust his administrative remedies on such issues renders this issue improperly before this court.”
 

 Bressman filed a motion to take the deposition of Knudsen, and to augment the administrative record with Knudsen’s deposition testimony. Bressman advised the court that he wanted to establish that Knudsen had an “ulterior motive” for terminating his, Bressman’s, privileges. Bressman claimed that evidence of such a motive would demonstrate that the proceedings before the MEC as well as the JRC were a “sham.”
 

 In support of his contention that he did not receive a fair administrative hearing, Bressman submitted the declaration of his attorney, Leon A. Zallen, who declared that it was his “belief’ that Knudsen had “maneuvered himself in such a way as to be outside of the proceedings before the Judicial Review Committee,” and that as a result, “testimonial evidence from Knudsen could not be obtained in establishing that through his conspiracy and coercion as an executive officer at [Pomona Valley] he had set in motion the apparatus for terminating Dr. Bressman’s privileges and for denying his reapplication for appointment.”
 

 Zallen concluded that the superior court “should have the opportunity to consider ... the role of Dr. Knudsen in initiating the summary suspension and recommendations of the Ad Hoc Investigating Committee of which Dr. Knudsen was a member.”
 

 Pomona Valley opposed Bressman’s motion, noting that discovery and augmentation of the record are narrowly restricted in section 1094.5 mandamus actions, and arguing that Bressman had failed to make the required
 
 *100
 
 showing under section 1094.5, subdivision (e) to entitle him to discovery and augmentation.
 

 The superior court granted Bressman’s motion, stating that he could take Knudsen’s deposition for the purpose of augmenting the administrative record. The court did not specifically identify any basis for granting the motion. However, it appears that the court agreed with Bressman’s contention that he could not have compelled Knudsen’s appearance before the JRC, and that as a consequence, he, Bressman, was unable to discover and present evidence of his claim that Knudsen initiated Bressman’s suspension for an “ulterior motive.”
 
 [3]
 
 Implied within the court’s ruling is that evidence of Knudsen’s motive in initiating the suspension and his role in denying Bressman’s reappointment application is relevant to the issue of whether Bressman received a fair administrative hearing.
 

 Pomona Valley filed this petition for writ of mandate challenging the court’s discovery order.
 

 II. Contentions
 

 Pomona Valley contends that the superior court abused its discretion in granting Bressman’s motion to depose Knudsen and to augment the record with his testimony because Bressman “made no showing as required under [section 1094.5, subdivision (e)] that he should be allowed to conduct discovery or augment the record.”
 

 III. Discussion
 

 A.
 
 Writ Relief
 

 A writ of prohibition is the proper means to review rulings allowing discovery in section 1094.5 cases because raising the issue on appeal is not an adequate remedy.
 
 (State of California
 
 v.
 
 Superior Court
 
 (1974) 12 Cal.3d 237, 243, 256-258 [115 Cal.Rptr. 497, 524 P.2d 1281];
 
 State of California
 
 v.
 
 Superior Court
 
 (1971) 16 Cal.App.3d 87, 91 [93 Cal.Rptr. 663].)
 

 B.
 
 Judicial Review of Administrative Orders and Findings
 

 Section 1094.5, subdivision (b) states that “[t]he inquiry in such a case shall extend to the questions whether the respondent has proceeded
 
 *101
 
 without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.”
 

 Where, as here, the issue is whether a fair administrative hearing was conducted, the petitioner is entitled to an independent judicial determination of the issue.
 
 (City of Fairfield
 
 v.
 
 Superior Court
 
 (1975) 14 Cal.3d 768, 776 [122 Cal.Rptr. 543, 537 P.2d 375].) This independent review is not a “trial de novo.”
 
 (Ibid.; Hadley
 
 v.
 
 City of Ontario
 
 (1974) 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513];
 
 Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd.
 
 (1987) 188 Cal.App.3d 872, 881 [233 Cal.Rptr. 708].) Instead, the court renders its independent judgment on the basis of the administrative record plus such additional evidence as may be admitted under section 1094.5, subdivision (e).
 
 (City of Fairfield
 
 v.
 
 Superior Court, supra,
 
 14 Cal.3d at p. 776;
 
 Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d at p. 881.)
 

 C.
 
 Augmentation of the Administrative Record
 

 “The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency. [Citation.]”
 
 (Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d at p. 881.) Augmentation of the administrative record is permitted only within the strict limits set forth in section 1094.5, subdivision (e) which provides as follows: “Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case.” (§ 1094.5, subd. (e);
 
 Armondo
 
 v.
 
 Department of Motor Vehicles
 
 (1993) 15 Cal.App.4th 1174, 1180 [19 Cal.Rptr.2d 399].) In the absence of a proper preliminary foundation showing that one of the exceptions noted in section 1094.5, subdivision (e) applies, it is error for the court to permit the record to be augmented.
 
 (Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d at p. 881.) Determination of the question of whether one of the exceptions applies is within the discretion of the trial court, and the exercise of that discretion will not be disturbed unless it is manifestly abused.
 
 (Armondo
 
 v.
 
 Department of Motor Vehicles, supra,
 
 15 Cal.App.4th at p. 1180.)
 

 
 *102
 
 D.
 
 Discovery
 

 Although there is no express provision allowing discovery in an administrative mandamus proceeding, section 1094.5, subdivision (e) has been interpreted to allow limited posthearing discovery provided the moving party shows that such discovery is reasonably calculated to lead to evidence
 
 admissible
 
 under section 1094.5.
 
 (Department of Health Services
 
 v.
 
 Superior Court
 
 (1980) 104 Cal.App.3d 80, 84 [163 Cal.Rptr. 414]; see also
 
 Barkin
 
 v.
 
 Board of Optometry
 
 (1969) 269 Cal.App.2d 714, 719 [75 Cal.Rptr. 337].) “The reason for the distinction is pointed out in
 
 [City of Fairfield
 
 v.
 
 Superior Court, supra,
 
 14 Cal.3d at pages 774-775, footnote 6]: ‘In an ordinary civil action, discovery is not limited to questions which may lead to admissible evidence, but includes inquiries relevant to the subject matter of the action which may be helpful in preparation for trial. [Citation.] An administrative mandamus action, on the other hand, reviews the administrative record which should contain all evidence the parties consider necessary to the resolution of contested issues. Consequently posthearing discovery may reasonably be limited to inquiries calculated to yield evidence which through no fault of the offeror does not appear in the administrative record. [Citation.]’”
 
 (Department of Health Services
 
 v.
 
 Superior Court, supra,
 
 104 Cal.App.3d at p. 84.)
 

 In other words, discovery under section 1094.5, unlike general civil discovery, cannot be used to go on a fishing expedition looking for unknown facts to support speculative theories. The stringent requirements set forth in section 1094.5, subdivision (e) require the moving party to identify what evidence is sought to be discovered for purposes of adding it to the record; to establish the relevancy of the evidence; and to show that either (a) any such relevant, additional evidence was improperly excluded at the administrative hearing, or (b) it could not have been produced at the hearing with the exercise of reasonable diligence. (§ 1094.5, subd. (e).) If the moving party fails to make the required showing, it is an abuse of the court’s discretion to allow posthearing discovery.
 

 Until the moving party identifies what evidence he or she seeks to discover, no determination can be made as to whether the evidence is relevant. Nor can the superior court determine why the evidence was not presented during the administrative hearing.
 

 E.
 
 Did the Superior Court’s Discovery Order Constitute an Abuse of Discretion?
 

 We now turn to the question of whether the superior court abused its discretion in granting Bressman’s motion to depose Knudsen. In order to
 
 *103
 
 make the determination, we are required to examine whether Bressman met the three-step test set forth in section 1094.5, subdivision (e).
 

 (1)
 
 Identification of Evidence
 

 A review of Bressman’s discovery motions shows that the information he sought to discover fell into two categories. The first concerned Knudsen’s alleged “ulterior motive” in suspending Bressman and in recommending that his reappointment application be denied. The second concerned whether the JRC panel members were, in some fashion, biased against Bressman because of Knudsen’s role in initiating Bressman’s suspension and in denying his reappointment application.
 

 With respect to the first category of information, Bressman submitted his declaration and that of his attorney, Zallen. Bressman set forth facts showing his long-standing relationship with Hauch, and noted that in 1990 he was the only surgeon providing vascular surgical care for the patients of that group. He then declared that in 1990 he was a practicing vascular surgeon in competition with Knudsen; that on April 24, 1990, Knudsen, as president of the medical staff, suspended him, Bressman, from all surgical privileges; and that on September 17, 1990, he, Bressman, received a letter from the MEC advising him that as of August 1990, Knudsen had entered into a contractual relationship with Hauch.
 

 Zallen, too, set forth facts with respect to Bressman’s relationship with Hauch. Zallen then described the events leading up to Bressman’s suspension. Zallen averred that on February 16, 1990, Bressman received a letter from Dr. John R. Witcher, chairman of the ad hoc investigative committee, who indicated that between February 1988 and May 1989 the surgery committee had impaneled the ad hoc committee to investigate the medical records of a number of patients who had undergone surgical procedures performed by Bressman. One of the members of the ad hoc committee, Dr. Lewis A. Vadheim, was Knudsen’s partner. The letter advised Bressman that the ad hoc committee had concluded that eight charts reflecting Bressman’s surgeries presented serious concerns, and that the ad hoc committee would be charged with reviewing and making a recommendation to the surgery committee as to Bressman’s 1990 reappointment application and surgical privilege request. On February 27, 1990, Bressman appeared before the ad hoc committee in regard to the concerns raised in the letter. On April 24, 1990, Knudsen, who was then chief of staff of the medical staff, and a vascular surgeon, summarily suspended Bressman’s surgical privileges. Zallen then noted that the hospital bylaws allow for such a summary suspension, and provide that the suspension may be imposed by the
 
 *104
 
 executive committee, any medical staff officer or the chairman of any clinical department in which the practitioner holds membership. After setting forth the foregoing, Zallen declared that “[d] espite the fact that. . . Knudsen was a known competitor to . . . Bressman, he, nevertheless, took it upon himself to make the summary suspension order.”
 

 Zallen then recounted the facts with respect to the MEC’s denial of Bressman’s appeal of the summary suspension, the subsequent ad hoc committee’s investigation, and the MEC’s recommendation to deny Bressman’s 1990 reappointment application.
 

 Zallen then stated that pursuant to Bressman’s agreement with Hauch, it was a requirement that Bressman be on the active staff at Pomona Valley, and that “[s]ince . . . Bressman no longer had privileges at [Pomona Valley], he could no longer practice with [Hauch].” Zallen then concluded that “Knudsen and his partners took advantage of that situation in securing an agreement to enter into a relationship with [Hauch] for the performance of general and vascular surgery.”
 

 Zallen then noted that prior to Knudsen’s August 20, 1990, announcement of the decision of the ad hoc investigating committee which recommended denial of the reappointment application, Knudsen sent to Dr. Albert E. Yellin (the subsequent prosecuting expert witness at the JRC hearing) a letter asking Yellin to review the eight charts of Bressman which had been selected for review in February of 1990. On September 5, 1990,
 
 [4]
 
 “and presumptively when . . . Knudsen’s negotiations with the Hauch Medical [Clinic] had been completed, he then informed the [MEC] of his potential economic conflict of interest and requested that the President-Elect, Dr. Duane Styles, take over the duties in regard to the application by . . . Bressman for reappointment. On September 11, 1990, the [MEC] concluded . . . that nothing with respect to . . . Knudsen’s August contractual relationship with [Hauch] had anything whatsoever to do with the reasons for the [MEC’s] upholding the April 20, 1990
 
 [sic]
 
 summary suspension of Bressman.” Zallen then noted the facts with respect to Bressman’s request for a JRC hearing, the JRC’s decision, and Bressman’s subsequent appeal.
 

 After setting forth the foregoing, Zallen declared that it is his “belief that since . . . Knudsen had maneuvered himself in such a way as to be outside of the proceedings before the [JRC], the testimonial evidence from . . . Knudsen could not be obtained in establishing that through his conspiracy and coercion as an executive officer at the hospital he had set in motion the
 
 *105
 
 apparatus for terminating . . . Bressman’s privileges and for denying his reapplication for appointment. There is no indication in the transcripts of the proceedings that. . . Knudsen was present during the hearings, and there is no showing that the [b]ylaws would allow for the issuance of a subpoena or a similar manner or method in which to compel the appearance of certain witnesses.”
 
 [5]
 

 A review of the declarations shows that essentially all of the information contained therein was known to Bressman prior to the time the first JRC hearing was convened on November 14,1990. It appears Bressman provided the superior court with this information for the sole purpose of establishing that an inference could be drawn from these facts that Knudsen initiated the investigation and suspended Bressman’s privileges so he could “steal” Bressman’s practice, i.e., obtain the Hauch contract.
 

 We agree that the facts, as presented in the declarations, could cause a reasonable person to question Knudsen’s motives, and that it would be difficult to obtain evidence to establish that Knudsen initiated the suspension for an improper purpose without deposing Knudsen as to his intent and actions prior to and following the suspension. As we explain later, evidence with respect to Knudsen’s motive in initiating the suspension is not, however, relevant to the issue of whether Bressman received a fair administrative hearing.
 

 Bressman was less than specific with respect to the second category of information he hoped to obtain by deposing Knudsen. Bressman alleged in his petition for writ of mandate that he did not receive a fair trial because the “doctors who comprised the JRC . . . were openly biased towards” him, “as these doctors maintained interests that were commingled with that of [Pomona Valley] which had taken actions to economically credential [Bressman] off staff by utilizing a driven peer review.” Contained within Bressman’s discovery motion is the argument that because of Knudsen’s “ulterior motive” in initiating Bressman’s suspension, the JRC proceedings were a “sham.” During the hearing on the discovery motion, Bressman’s attorney indicated to the court that it was his “belief’ that Knudsen was a “player” in the JRC proceedings, and that “he may have had involvement in the panel that was subject to voir dire,” since Knudsen was the one “who set forth the summary suspension that ultimately was decided by this JRC panel and
 
 *106
 
 upheld.” We interpret these statements and allegations to mean that Bressman developed, either prior to, or following, the JRC hearings the theory that Knudsen used his position as an executive officer at Pomona Valley in order to influence the JRC panel members to vote to uphold the MEC’s recommendation that his reappointment application be denied. Accordingly, we will assume, for purposes of this petition, that Bressman wanted to depose Knudsen, at least in part, in order to explore whether Knudsen biased the JRC panel members against him, Bressman.
 

 (2)
 
 Relevancy of the Evidence
 

 (a)
 
 Knudsen’s Alleged “Ulterior Motive”
 

 Even if we assume that Knudsen’s testimony would have established that he had an “ulterior motive” for suspending Bressman’s privileges, and that he thereafter biased the MEC against Bressman so that they would vote to deny Bressman’s reappointment application, such evidence would not be relevant to the JRC’s determination of whether the charges against Bressman were true.
 

 Cole
 
 v.
 
 Los Angeles Community College Dist.
 
 (1977) 68 Cal.App.3d 785 [137 Cal.Rptr. 588]
 
 (Cole)
 
 is instructive. In that case, a security police officer employed by a community college was served with two notices of unsatisfactory service and was notified that he was suspended from duty and would be discharged as of a certain date. The officer’s immediate superiors filed with the board of trustees a statement of charges, based on the earlier notices. Thereafter, the board, without hearing, voted to discharge the officer. The officer then filed with the college personnel commission an appeal from the order of discharge. The commission appointed a hearing officer who sustained the discharge. Later, the commission upheld the order of dismissal.
 
 (Id.
 
 at p. 788.) The officer then filed a section 1094.5 action to reverse the order of dismissal. The superior court granted in part a peremptory writ of mandate, but later discharged the writ. (68 Cal.App.3d at pp. 789-790.) The officer appealed.
 

 The officer’s contention, throughout the case, was that the charges against him were motivated by spite on the part of his fellow officers and his superiors because he had previously testified in a court case that his fellow officers were guilty of certain illegal actions. Evidence in support of the officer’s position was presented to the hearing board, and the board found that the allegations were true. In the mandamus action, the superior court found that any such motivation had not affected the dismissal order.
 
 (Cole, supra,
 
 68 Cal.App.3d at p. 791.) The court concluded that because the decision of the commission was “untainted by the improper motivation,” the
 
 *107
 
 motivation of the officer’s superiors in causing the discharge was irrelevant to the board’s decision.
 
 (Id.
 
 at p. 792.) The Court of Appeal, in finding the conclusion proper, held that “[i]t is the bias of the tribunal deciding a case, not the bias of the person instituting the proceeding that is important.”
 
 (Ibid.)
 

 The facts here are not in dispute. Although Knudsen suspended Bressman and was a member of the committee which recommended that Bressman’s reappointment application be denied, Knudsen was not a hearing officer, a member of the JRC or a member of the appeal board of Pomona Valley’s board of directors.
 
 [6]
 
 Consequently, evidence of Knudsen’s motive in
 
 initiating
 
 Bressman’s suspension, and his subsequent actions with respect to the denial of Bressman’s reappointment application is not relevant to the issue of whether Bressman had a fair administrative hearing.
 
 (Cole, supra,
 
 68 Cal.App.3d at pp. 791-792; see also
 
 Citizens Capital Corp.
 
 v.
 
 Cathcart
 
 (1982) 136 Cal.App.3d 793, 799 [186 Cal.Rptr. 515] [“[A]ny alleged bias of the accuser [is] irrelevant.”];
 
 Sodifoff v. State Bar
 
 (1975) 14 Cal.3d 422, 431 [121 Cal.Rptr. 467, 535 P.2d 331] [personal motive of person initiating state bar proceedings against an attorney is not controlling when the facts show the attorney is subject to disciplinary action].)
 

 (b)
 
 Evidence Showing Bias on the Part of the JRC
 

 Assuming that Knudsen initiated Bressman’s suspension for an improper motive,
 
 Cole, supra,
 
 68 Cal.App.3d 785, makes clear that the only evidence relevant to a determination of whether Bressman received a fair administrative hearing is evidence which demonstrates that the decision of the JRC was tainted as a result of Knudsen’s improper motivation. In other words, the evidence must show that the JRC panel members were in some way biased against Bressman because of Knudsen’s involvement. Evidence of such bias would, of course, be relevant to a determination of whether Bressman received a fair administrative hearing. This does not mean, however, that the court’s order directing Knudsen to appear for deposition was warranted since Knudsen’s impartiality is not at issue. Rather, it is the impartiality of the JRC panel members which is of concern in determining whether Bressman received a fair administrative hearing.
 

 In order to make a determination as to whether Knudsen’s testimony with respect to the issue of the JRC panel members’ alleged bias was needed to
 
 *108
 
 augment the administrative record, Bressman was obligated, pursuant to section 1094.5, subdivision (e) to present the superior court with information from which it could be determined that the evidence was improperly excluded from the JRC hearings, or that Bressman could not, in the exercise of reasonable diligence, have produced the evidence.
 

 (3)
 
 What Evidence of Bias on the Part of the JRC Panel Members, If Any, Was Presented to the JRC?
 

 Bressman claims that he complied with section 1094.5, subdivision (e) because he demonstrated to the superior court that he could not have “in the exercise of reasonable diligence” produced testimony from Knudsen at either the JRC or appellate hearings. Bressman notes that the JRC hearing officer did not advise him, and that lacking a legal background, he “did not know to compel. . . Knudsen’s appearance at the hearing.” He also claims he could not have subpoenaed Knudsen to appear before the JRC.
 
 [7]
 

 With respect to evidence of possible bias on the part of the JRC panel members, the superior court’s focus should not have been on whether Bressman wanted to question Knudsen during the JRC hearings concerning this issue, and was denied the opportunity to do so because Knudsen could not be subpoenaed to appear before the JRC. Rather, the focus should have been on whether Bressman attempted, during the JRC hearings, to question the JRC panel members concerning whether they were biased against him, either because of their relationship and/or prior contacts with Knudsen, or for any other reason. Bressman failed to address this issue. A review of his discovery motion shows that he did not present the superior court with information concerning what evidence, if any, is contained within the administrative record with respect to determining whether any, or all, of the JRC panel members were biased against Bressman.
 
 [8]
 
 Thus, the court had no
 
 *109
 
 basis for determining that Knudsen’s testimony was necessary to augment the administrative record on this issue.
 
 [9]
 

 F.
 
 Conclusion
 

 Section 1094.5 was designed to give great deference and respect to administrative orders and findings. It sets narrow limits on a party’s ability to obtain a new administrative hearing, and part of those limits include narrow restrictions on discovery and augmenting the administrative record. (See
 
 Armondo
 
 v.
 
 Department of Motor Vehicles, supra,
 
 15 Cal.App.4th at p. 1180;
 
 Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d at p. 881.)
 

 Here, the trial court allowed discovery and augmentation in the absence of a proper preliminary foundation showing that one of the exceptions noted in section 1094.5, subdivision (e) applies. This it was not permitted to do.
 
 (Toyota of Visalia, Inc.
 
 v.
 
 New Motor Vehicle Bd., supra,
 
 188 Cal.App.3d at p. 881.) We conclude, therefore, that the trial court abused its discretion in granting Bressman’s motion to take Knudsen’s deposition and to augment the record with his testimony.
 

 IV. Disposition
 

 Accordingly, the superior court is directed to set aside its order granting real party’s motion to depose Dr. Frederick Knudsen and to augment the record with his testimony and to issue a new and different order denying the motion. The temporary stay is vacated. Real party to pay the costs of this petition.
 

 Boren, P. J., and Zebrowski, J., concurred.
 

 [1]
 

 All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
 

 [2]
 

 Section 9.4-2 of the medical staff bylaws is entitled “Representation During a Judicial Review Committee Hearing.” The section provides as follows; “The hearings provided for in these Bylaws shall be for the purpose of intra-professional resolution of matters bearing upon conduct or professional competency. Accordingly, during a Judicial Review Committee hearing, neither the petitioner nor the body whose decision prompted the hearing shall be represented by a person with any legal training unless the Judicial Review Committee, in its discretion, shall have permitted both sides (at their own expense) to be represented by attorneys at law who have been licensed as such by the State of California. TTie foregoing shall not be deemed to deprive any party of its right to legal advice for the purpose of preparing for any hearing. Unless the Judicial Review Committee, in its discretion, shall have permitted both sides to be represented by such attorneys at law (in which case, the body whose decision prompted the hearing may be so represented only if the petitioner elects to be so represented), then, during a Judicial Review Committee hearing, the petitioner shall be entitled to be represented and/or to be accompanied only by a physician, dentist or podiatrist licensed to practice in the State of California who has no legal training and who, preferably, is a member in good standing of the Medical Staff; and, the body whose decision prompted the hearing shall be responsible for appointing (from the Medical Staff or, if the Governing Body’s decision prompted the hearing, then from the Medical Staff or the Governing Body) a representative (who has no legal training) to present its case and to examine any witnesses that may testify.” Bressman does not claim that he was deprived of his right to legal advice for the purpose of preparing for the JRC hearings, and documentation contained within this limited record shows that Bressman exercised that right. Moreover, nothing contained within this record indicates that the JRC abused its discretion in denying Bressman the right to be represented by legal counsel during the JRC hearings.
 

 [3]
 

 According to the court, Bressman’s position was that he “couldn’t get Dr. Knudsen” before the JRC.
 

 [4]
 

 The declaration specifies that the date was December 5, 1990. This appears to be a typographical error since it is undisputed that the memorandum is dated September 5, 1990.
 

 [5]
 

 The record shows that Pomona Valley lodged objections to various portions of Zallen’s declaration. A review of the objections show that many are valid. The court did not, however, rule on Pomona Valley’s objections. We will assume, for purposes of this opinion, that the facts set forth in Zallen’s declaration are true. We will, however, disregard Zallen’s improper opinion and legal conclusions.
 

 [6]
 

 The medical bylaws provide that “[t]he individuals selected to serve on the [JRC], whether as members or as alternates, shall gain no direct financial benefit from the outcome of the hearing and shall not have participated as an accuser, investigator, factfinder or initial decisionmaker in, or otherwise have participated actively during the formal consideration of, the matter at any previous level—though knowledge of the issues involved shall not preclude an individual from serving as a member, or as an alternate, on such a Committee.” Bressman does not claim that this bylaw was violated.
 

 [7]
 

 As previously noted, evidence concerning Knudsen’s alleged ulterior motive in initiating Bressman’s suspension and in denying Bressman’s reappointment application is not relevant to a determination of whether Bressman received a fair administrative hearing. Thus, the superior court had no obligation to inquire as to whether Bressman, “in the exercise of reasonable diligence” could have compelled Knudsen to testify before the JRC on this issue, or whether evidence concerning Knudsen’s motives was improperly excluded during the JRC hearings.
 

 [8]
 

 At the time Bressman filed his discovery motion, he also sought permission to file a summary of the JRC hearings rather than a complete administrative record. The superior court denied the request finding that Bressman could not “substitute the administrative record with a statement of facts containing selective portions of the transcript.” There is no indication that the court reviewed this statement of facts in connection with Bressman’s discovery/augmentation motion, and it would have been error for it to have done so since, as the court noted, the statement contained only “selective” portions of the transcripts.
 

 [9]
 

 Attached to Pomona Valley’s petition for writ of mandate is a copy of a reporter’s transcript of the first JRC hearing held November 14, 1990. It demonstrates that Bressman asked each member if they had any relationships with the executive staff which would cause them to be biased against him. Each answered that they did not. The transcript also reveals that Bressman asked a number of questions concerning Knudsen. In his return, Bressman claims that he was not allowed to conduct an in-depth voir dire, and that as a result, he did not explore, in depth, Knudsen’s relationship with and possible influence over the JRC panel members. This information was not before the superior court, and Pomona Valley did not ask for permission to augment the record with this information. We have, therefore, disregarded it.