Filed 10/24/22  Nashed v. Los Robles Regional Medical Center CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

ASHRAF NASHED,

    Plaintiff and Appellant,

v.

LOS ROBLES REGIONAL
MEDICAL CENTER et al.,

    Defendants and
Respondents.

2d Civ. No. B313131
(Super. Ct. No. 56-2019-
00529474-CU-WM-VTA)
(Ventura County)

Ashraf Nashed, M.D. appeals a judgment denying his petition for writ of administrative mandamus to challenge the decision of respondents Los Robles Regional Medical Center and Los Robles Hospital Medical Staff, Inc. (collectively the Hospital) to deny his request for category III cardiology privileges.  We conclude, among other things, that:  1) the admission of unfavorable evidence at the administrative hearing did not deny Nashed a fair administrative proceeding; 2) an administrative hearing judge and an appeal board member were not biased

1

against Nashed; and 3) substantial evidence supports the judgment.  We affirm.

FACTS

Nashed is an interventional cardiologist.  He practiced medicine at the Hospital with "staff and surgical privileges."  The Hospital's medical executive committee (MEC) makes "recommendations regarding the Medical Staff['s]" performance.

The Hospital's medical staff granted Nashed's application for reappointment to the medical staff and certain cardiology privileges.  But they denied his request for full "[c]ategory III interventional cardiology privileges" because he "lacked the professional ability and clinical judgment qualifications for [those] privileges."

Nashed requested a hearing under the Hospital's review procedures, which include a hearing before an administrative hearing judge, referred to as an "arbitrator," and a review by an appeal board.

The arbitrator conducted a hearing where medical experts testified in favor of and against Nashed.  The arbitrator upheld the recommendation to deny full category III privileges.  Nashed appealed to the board of trustees.  His appeal was decided by a three-member appeal board appointed by the trustees.

The appeal board affirmed the arbitrator's decision.  In 2019, the board of trustees issued the final decision affirming the arbitrator's decision.

Nashed filed a petition for writ of administrative mandamus.  (Code Civ. Proc., § 1094.5.)  He claimed he was denied a fair administrative proceeding; inadmissible evidence was admitted; the arbitrator was biased; Doctor Paul David, a

2.

member of the appeal board, was biased; and there was no substantial evidence to support the decision.

The Hospital claimed the medical evidence in the record showed problems with Nashed's medical judgment. Nashed treated an 84-year-old patient and anticipated performing an angioplasty, but he had "difficulty with passing the balloon." Another cardiologist had to perform the procedure. Nashed "failed to adequately plan" for the procedure, "was incapable of completing [it]," and 3) "lacked appropriate clinical judgment."

The superior court independently reviewed the administrative record. It found Nashed received a fair administrative hearing. Nashed did not show that the arbitrator and David were biased, and the evidence supported the decision to deny the category III privileges.

DISCUSSION

*A Fair Administrative Hearing*

Nashed contends he was denied a fair administrative hearing. We disagree.

"A hospital may not deprive a physician of staff privileges without granting him minimal due process of law protection." (*Rhee v. El Camino Hospital Dist.* (1988) 201 Cal.App.3d 477, 488.) "This does not, however, compel adherence to formal proceedings or to any single mode of process." (*Id.* at p. 489.) "A physician's right to pursue his livelihood . . . must be balanced against . . . the interest of members of the public in receiving quality medical care . . . ." (*Ibid.*) When the issue is a fair procedure, "the court will treat the issue as one of law, subject to independent review based on the administrative record." (*Ellison v. Sequoia Health Services* (2010) 183 Cal.App.4th 1486, 1496.)

*The Purmer Letter*

Nashed contends a letter by Doctor Purmer should have been excluded at the administrative hearing. In that letter Purmer evaluated Nashed's deployment of a "stent." He said, "The stent was deployed at suboptimal pressure and this greatly increases the risk for stent thrombosis." Nashed claims this was not Purmer's actual letter and the arbitrator erred by not having an expert examine it to make sure it was not a forged copy. We disagree.

Purmer authenticated the letter by testifying he wrote it. The arbitrator examined it and found it was *the original* document. The letter was properly admitted (Evid. Code, § 1413; *People v. Charles* (2015) 61 Cal.4th 308, 322), and Nashed has not shown prejudice because the arbitrator did not rely on it in making his findings. (*D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 231.)

*The November 11th Letter*

Nashed contends the arbitrator improperly admitted a November 11, 2014, letter where Nashed said he was relinquishing his interventional cardiology privileges. He claims it was admitted without proper authentication.

But " 'strict rules of evidence' " do not apply in administrative hearings. (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 291-292; *Rhee v. El Camino Hospital Dist.*, *supra*, 201 Cal.App.3d at p. 489.) The letter was not signed. But the arbitrator could consider the timing of the letter, its content, and the surrounding circumstances to find Nashed wrote it. (Evid. Code, §§ 1412, 1417, 1421.) Nashed has not shown prejudice. We note the arbitrator did not mention or rely on it in making his decision.

4.

*The Arbitrator's Alleged Bias*

Nashed contends arbitrator John Harwell was biased because he requested Harwell to be his counsel in these proceedings, but Nashed ultimately "declined to retain him." Nashed argues Harwell "may have harbored ill will toward [him] given that he declined Mr. Harwell's services."

The trial court found Nashed knew the relevant facts before the hearing, but he "only raised this concern after the Arbitrator ruled against him." Disqualification for bias "must be raised *at the earliest reasonable opportunity* after the party becomes aware of the disqualifying facts." (*North Beverly Park Homeowners Assn. v. Bisno* (2007) 147 Cal.App.4th 762, 769, italics added; *People v. Tappan* (1968) 266 Cal.App.2d 812, 817.) Nashed forfeited this issue because he knew the facts before the hearing, but he only raised the bias issue after he received an unfavorable decision. (*Goodwin v. Comerica Bank, N.A.* (2021) 72 Cal.App.5th 858, 867.)

Bias is not "presume[d]." (*Natarajan v. Dignity Health* (2021) 11 Cal.5th 1095, 1115; *id.* at p. 1113 [there must be evidence showing "an intolerable risk of actual bias"]; *El-Atttar v. Hollywood Presbyterian Medical Center* (2013) 56 Cal.4th 976, 995; *Weinberg v. Cedars-Sinai Medical Center* (2004) 119 Cal.App.4th 1098, 1115.) Bias is not shown because the arbitrator ruled against Nashed on two evidentiary issues. (*Andrews v. Agricultural Labor Relations Board* (1981) 28 Cal.3d 781, 795.) Nashed has not shown the arbitrator's rulings or hearing conduct showed bias. The "mere suggestion of bias" is not sufficient "to overcome the presumption of integrity and honesty" of the decision-maker. (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1236.) Nashed only makes

5.

the speculative claim that Harwell "*may* have harbored some ill will" against him.  (Italics added.)  But he has not cited to evidence.

Moreover, Nashed had the opportunity to present evidence of bias at the mandamus hearing (Code Civ. Proc., § 1094.5, subd. (e); *Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101), but did not do so.  Based on its independent judgment, the trial court found no evidence of bias. (*Levingston v. Retirement Board* (1995) 38 Cal.App.4th 996, 1000; *Val Strough Chevrolet Co. v. Bright* (1969) 269 Cal.App.2d 855, 860.)  Nashed has not shown the court erred.

*Bias of An Appeal Board Member*

Nashed contends Doctor David, a member of the appeal board, was biased.  He "is *informed* that Dr. David *may have* a financial interest due to his practice group's exclusive contract to staff the Emergency Department with physicians at Los Robles." (Italics added.)  He argues he should have been given a chance to "voir dire" him.

But the trial court correctly found Nashed forfeited this claim because:  1) Nashed only raised it "after the Appeal Board" decision; 2) he knew the identity of the board members "14 months prior to" his first objection; and 3) he did not make a "voir dire" request to the appeal board or conduct a timely investigation.

But even on the merits, the result does not change.  Nashed claims a letter by his attorney is evidence of David's economic bias.  But the trial court correctly found it was not evidence.  It was a letter by Nashed's counsel to another attorney requesting information about David.  Moreover, Nashed did not present evidence of bias at the mandamus hearing (Code Civ. Proc.,

6.

§ 1094.5, subd. (e); *Pomona Valley Hospital Medical Center v. Superior Court*, *supra*, 55 Cal.App.4th at pp. 101-102), and that undermines this claim. Merely speculating "that Dr. David *may have* a financial interest" does not suffice. (*El-Attar v. Hollywood Presbyterian Medical Center*, *supra*, 56 Cal.4th at pp. 995-997; *Weinberg v. Cedars-Sinai Medical Center*, *supra*, 119 Cal.App.4th at p. 1115.)

Moreover**,** the trial court independently found no evidence of bias. (*Levingston v. Retirement Board*, *supra*, 38 Cal.App.4th at p. 1000; *Val Strough Chevrolet Co. v. Bright*, *supra*, 269 Cal.App.2d at p. 860.) Nashed has not shown error.

*Substantial Evidence*

Nashed contends there is no substantial evidence to support the decision to deny him the privileges. We disagree.

A hospital may deny privileges to a doctor where he or she "exhibited a pattern of substandard surgical techniques and poor medical judgment." (*Gill v. Mercy Hospital* (1998) 199 Cal.App.3d 889, 900.) They may be denied where the doctor did not perform required tests, misunderstood medications, or made improper medical assessments. (*Bonner v. Sisters of Providence Corp.* (1987) 194 Cal.App.3d 437, 447.)

In deciding substantial evidence, we do not "resolve differences of medical judgment." (*Cipriotti v. Board of Directors* (1983) 147 Cal.App.3d 144, 154.) We determine whether the decision is supported "in the light of the *whole* record," and we draw all reasonable inferences in support of the findings. (*Ibid*.)

The arbitrator found Nashed was not eligible for category III privileges because of: 1) "a historic problem with Dr. Nashed's clinical judgment and technical skills," and 2) his "lack of

understanding" of his responsibilities "to assure that patients are prepared for interventional procedures."

Nashed challenges these findings by citing to his own testimony. But the issue is not whether some evidence supports appellant, it is whether substantial evidence supports the judgment. The arbitrator did not find Nashed to be credible. Nashed notes assessments by Doctor Mahmud and Doctor Norcross were "laudatory." But the arbitrator gave greater weight to other doctors who testified against Nashed. We do not resolve "differences of medical judgment." (*Cipriotti v. Board of Directors, supra,* 147 Cal.App.3d at p. 154.) Nashed claims a quality care committee (QCC) determined that "no restriction on his privileges was necessary." But it found that Nashed had to "be limited to diagnostic cardiology and *forego interventional (invasive) cardiology*" until further review. Nashed claims an ad hoc committee (AHC) decided not to terminate his current privileges. But the issue is entitlement to higher privileges.

Moreover, Nashed must show the trial court erred. The court made its own independent findings from the record. (*Levingston v. Retirement Board, supra,* 38 Cal.App.4th at p. 1000.) It found Nashed did not have "the professional ability and clinical judgment qualifications for those privileges" as shown by the testimony and reports by "[Doctors] Dohad, Green, and Papanicolaou." Nashed has not shown error.

Nashed attempted an angioplasty procedure for an 84-year-old patient that he was unable to complete. Another doctor had to finish the operation for him. The treatment of this patient showed problems with Nashed's medical abilities. Doctor Papanicolaou said this incident showed "questionable judgment calls" by Nashed. Nashed attempted "a quite challenging vessel

on the second day with no clear advance in strategy." Doctor Reidy said "by having a physician caring for a patient that we have concerns over to where we have to *provide a backup . . . every time he lays hands on that patient*" is a problem. (Italics added.) "We did not feel that *was safe* for the community and a reasonable thing for the medical staff to be burdened with doing." (Italics added.)

Doctor Suhail Dohad testified Nashed performed a renal artery stent operation on a patient without documentation to support it and without a medical necessity for it. Nashed did not meet the standard of care. He performed an abdominal aortography without a medical necessity for it. He had unnecessarily exposed a patient to "multiple potential dramatic complications." He had created the risk for stent thrombosis. Doctor Nathan Green said Nashed had "inadequate documentation" of a "final angiographic result" and he performed a "renal arteography" that "was medically unnecessary in a patient with recent renal insufficiency." The arbitrator found Green's testimony showed Nashed had "substandard technical skills" that resulted in a "coronary dissection, unrecognized perforation," and it showed his "misinterpretation of clinical results." The trial court could reasonably make the same findings. Dohad concluded that Nashed failed "to adequately manage medications," which was "the etiology of the cascade of events" leading to a "patient's demise."

The MEC reviewed Nashed's performance and noted his privileges were summarily suspended in 2008. Nashed had inserted a stent in a "wrong vessel." Dohad said Nashed had "multiple opportunities" to prevent this mistake. Nashed had performed an abdominal aortography without a patient's consent.

MEC said Nashed "did not provide *competent interventional cardiology care* to elective and emergency patients *consistently*." (Italics added.)

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded in favor of the respondents.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10.

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Fenton Law Group and Nicholas D. Jurkowitz for Plaintiff and Appellant.

Theodora Oringher, Todd C. Theodora, Anthony F. Witteman and Adam G. Wentland for Defendants and Respondents.