Filed 8/26/13  Ellis v. Valverde CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CANDACE ELLIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>GEORGE VALVERDE, as Director, etc.,<br><br>    Defendant and Respondent. | B242156<br><br>(Los Angeles County<br>Super. Ct. No. BS134486) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Chad R. Maddox and Chad R. Maddox for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Michael E. Whitaker and Bruce Reynolds, Deputy Attorneys General, for Defendant and Respondent.

_____

Appellant Candace Ellis appeals from the trial court's order denying her petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5. In her petition, Ellis sought an order directing the Department of Motor Vehicles (DMV) to set aside the suspension of her driver's license for refusing to submit to, or failing to complete, a chemical test for her blood alcohol content in violation of Vehicle Code[1] section 13353, subdivision (a)(1). On appeal, Ellis argues the trial court erred in denying her writ petition because she never refused to submit to a chemical test, and even if she did refuse, she was not properly admonished about the consequences of doing so. She also asserts the trial court erred in denying her motion to augment the administrative record with a document which she contends could not have been produced at the administrative hearing in the exercise of reasonable diligence, and if admitted, would have proven that she in fact completed a chemical breath test. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Events Surrounding Ellis's Arrest

On April 23, 2011, at 10:30 a.m., Ellis was pulling her vehicle out of her driveway in Bellflower, California when she hit a car that was parked in front of her house. The car that Ellis struck in turn hit a child who was standing nearby, causing the child to suffer minor injuries. Los Angeles County Deputy Sheriff J. Norville responded to the scene of the collision where he observed objective symptoms of intoxication in Ellis, including bloodshot and watery eyes, an odor of alcohol on her breath, an unsteady gait, and slurred speech. After administering a series of field sobriety tests, Deputy Norville arrested Ellis for driving under the influence of alcohol (DUI) and transported her to the Lakewood Sheriff's Station.

According to a sworn DS 367 form completed by Deputy Norville, he admonished Ellis at 11:45 a.m. in Lakewood, California about the consequences of failing to submit to, or complete, a chemical test to determine her blood alcohol content. Deputy Norville

_____

[1] Unless otherwise stated, all further statutory references are to the Vehicle Code.

2

also advised Ellis that, because he believed she was under the influence of alcohol, she had the choice of taking either a breath or blood test. Ellis agreed that she would take a breath test. At the Lakewood station, Deputy Norville attempted to administer a chemical breath test to Ellis three times using the Datamaster breathalyzer machine, Instrument No. 130071. According to Deputy Norville's arrest report, Ellis failed to provide adequate breath samples by blowing past the mouthpiece each time, and the breathalyzer machine rejected all three sample attempts. The arrest report included a copy of the Sheriff's Department Datamaster.cdm Precautionary Checklist with three receipts indicating the results of Ellis's chemical breath test. Two receipts recorded an "insufficient sample" and one receipt recorded an "invalid sample."

Deputy Norville asked Ellis if she would consent to a chemical blood test, but she refused. Later, he again asked Ellis if she would submit to a blood test. She said, "No, my veins are bad." According to Ellis, she told the deputy that she was afraid of needles when he asked her to take a blood test. Ellis then asked Deputy Norville if she could take a urine test, but he refused. Deputy Norville thereafter served Ellis with administrative per se suspension/revocation order which stated that her driver's license was subject to suspension based on a "chemical test refusal."

## II.     The Administrative Per Se Hearing

On August 23, 2011, an Administrative Per Se (APS) hearing was held before the DMV. Ellis appeared at the hearing with her attorney, Frank Duncan. Without objection, the hearing officer admitted into evidence the following three exhibits from the DMV: (1) the documents completed by Deputy Norville consisting of the sworn DS 367 form, the unsworn arrest report with the Datamaster.cdm Precautionary Checklist, an unsworn collision report, and a sworn traffic citation issued to Ellis for driving under the influence; (2) the APS Suspension/Revocation Order and Temporary License served on Ellis; and (3) a DMV print out of Ellis's driving record. Ellis offered only one document into evidence -- her signed handwritten statement describing how the collision occurred.

3

Ellis testified on her own behalf at the hearing. In addition to describing events at the accident scene, Ellis stated that, following her arrest, she was given a breathalyzer test that "came back insufficient." She recounted that she tried to follow instructions during the test and kept "blowing real hard" as directed by Deputy Norville, but the test "came back again insufficient." When asked by her attorney if she suffered from asthma or a similar condition, Ellis answered that she had "just stopped smoking in October." She testified that, 30 minutes after the breath test, Deputy Norville asked her to take a blood test and she told him that she "had a fear of needles." She also stated that she specifically asked Deputy Norville if she could take a urine test, but he said no. Ellis explained at the hearing that she had difficulty with blood tests in the past and that it was very painful for her when "they can't find my vein . . . for my blood work."

Ellis further testified that, after she was released and returned home, she reviewed the paperwork that Deputy Norville had given to her at the station. She noticed then that the paperwork indicated a "chemical refusal," which she found confusing because she "blew in the machine and it came back insufficient." Ellis stated that she never knew that a chemical refusal could result in the suspension of her license and that she did not know what a chemical refusal was until a friend later explained it to her. In response to this testimony, the hearing officer read aloud the chemical test admonition in the DS 367 form that Officer Norville had completed. Ellis did not deny that the admonition had been read to her by Officer Norville, nor did she provide any further testimony to support her position. No other witnesses were called to testify at the administrative hearing.

On September 20, 2011, the DMV issued a Notification of Findings and Decision. The hearing officer specifically found that (1) the arresting officer had reasonable cause to believe Ellis was driving a motor vehicle while under the influence of alcohol, (2) Ellis was lawfully arrested, (3) Ellis was told that her driving privilege would be suspended or revoked if she refused to submit to, or failed to complete, a chemical test for her blood alcohol content, and (4) Ellis refused to submit to a chemical test after being asked to do so by the arresting officer. Based on these findings, the DMV ordered the suspension of Ellis's driver's license for one year commencing on September 29, 2011.

4

**III.    The Petition for Writ of Administrative Mandate and Motion to Augment**

On October 21, 2011, Ellis filed a petition for writ of administrative mandate in the Los Angeles County Superior Court.  She was represented by new counsel, Chad Maddox, in the trial court proceedings.  In her petition, Ellis sought an order directing the DMV to set aside the suspension of her driver's license on the grounds that she never refused to submit to a chemical test and she was not advised of the consequences of a refusal to submit.  Prior to the hearing on the petition, the trial court granted Ellis's ex parte application to continue the hearing date to allow her additional time to file a motion to augment the administrative record.  The hearing was continued to June 14, 2012.

On May 16, 2012, Ellis filed a motion to augment the administrative record and a supplemental memorandum of points and authorities in support of the writ petition.  Ellis sought to augment the record with a one-page document entitled "Los Angeles County Sheriff's Department Blood Alcohol Testing Section Instrument Usage Log"  (Usage Log). The Usage Log purported to show test results recorded on Instrument No. 130071 at the Lakewood station from April 22 to April 24, 2011.  According to the Usage Log, Deputy Norville administered a total of three testing sequences on April 23, 2011.  The first sequence, at 12:09:50, recorded a "Value 1" of 0.236 and no "Value 2."  The second sequence, at 12:13:42, recorded a "Value 1" of 0.238 and no "Value 2."  The third sequence, at 12:17:20, returned a "V" code with no recorded "Value 1" or "Value 2."

In her supplemental papers, Ellis argued that, contrary to the evidence admitted at the administrative hearing, the Usage Log showed that she had in fact completed a chemical breath test.  She also asserted that an attorney exercising reasonable diligence would not have presented the Usage Log at the administrative hearing, and that the trial court should consider this additional evidence as a matter of equity.  Ellis's motion to augment was supported by declarations from her former attorney in the administrative proceedings, two attorneys who specialized in DUI defense including her current counsel, and the law clerk for her current counsel who had discovered the Usage Log.

In his declaration, Frank Duncan, Ellis's former attorney, stated that he reviewed the discovery provided by the DMV prior to the administrative hearing, including the DS

5

367 form, the arrest report, and the three Datamaster receipts, and that such material "led [him] to believe that no evidence existed which would have proved [Ellis] had in fact completed two breath tests." In their declarations, Chad Maddox, Ellis's current attorney, and Vincent John Tucci, the past president of the California DUI Lawyer's Association, similarly stated that they had extensive training and education on the operation and administration of breath testing equipment including the Datamaster, and had represented over 1,000 clients in APS hearings before the DMV. Both Maddox and Tucci opined that, when provided with the discovery material produced in this matter, "an attorney exercising reasonable diligence would not suspect that any evidence existed which would have proved [Ellis] had in fact provided two breath samples which resulted in measured results. . . ." They also opined that an attorney with expertise in the DUI and APS field "would likely exercise greater diligence, seeking out additional evidence of a successful test despite the officer's sworn statements and Datamaster printouts purporting that none existed." Maddox further explained that, after reviewing the discovery in this case, he directed his law clerk to search for available breath testing records. In his declaration, Maddox's law clerk stated that, on March 9, 2012, he accessed the online database maintained by the Los Angeles County Sheriff's Department for breath testing instruments, searched the instrument usage log for Instrument No. 130071 during the relevant time period, and downloaded the Usage Log from the Sheriff's Department website.

The DMV opposed both the motion to augment and the writ petition. With respect to the motion to augment, the DMV countered that Ellis did not satisfy the requirements for submitting new evidence under Code of Civil Procedure section 1094.5 because an attorney exercising reasonable diligence could have discovered the Usage Log prior to the administrative hearing. With respect to the writ petition, the DMV contended that the evidence presented at the administrative hearing demonstrated that Ellis had refused to submit to a chemical test of her blood alcohol content within the meaning of the Vehicle Code because she deliberately had failed to complete a breath test and unequivocally had refused to take a blood test. The DMV also claimed there was sufficient evidence to

6

establish that Ellis had been properly admonished about the consequences of refusing to submit to a chemical test and that Ellis's testimony at the administrative hearing did not support a contrary finding.

On June 14, 2012, the trial court denied both the motion to augment and the writ petition. In denying the motion to augment, the trial court concluded that Ellis had failed to demonstrate that the Usage Log could not have been presented at the administrative hearing in the exercise of reasonable diligence, particularly given how easily the evidence had been discovered by her current counsel. The court also noted that equity did not favor Ellis because the Usage Log could not exonerate her without expert testimony explaining the various entries, and standing alone, the log appeared to show that she was guilty of driving under the influence of alcohol. In denying the writ petition, the trial court found that, whether deliberately or not, Ellis had failed to complete a chemical breath test. The court further found that Ellis had refused to submit to a chemical blood test and that her stated concern about her veins being bad or fearing needles did not establish that she was incapable of completing the test. In addition, the court found that the reports completed by Deputy Norville were sufficient to show that Ellis had been read the chemical test admonition, and that Ellis had failed to rebut those reports with any credible evidence. Based on such findings, the trial court upheld the one-year suspension of Ellis's driver's license. Ellis thereafter filed a timely notice of appeal.

## DISCUSSION

### I.  Standard of Review

Code of Civil Procedure section 1094.5 governs judicial review by administrative mandate of any final decision or order rendered by an administrative agency. If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32; *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143.) The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine

7

whether the weight of the evidence supports the administrative findings. (*Bixby v. Pierno*, *supra*, at p. 143.) An administrative decision to suspend a driver's license affects a fundamental vested right, and thus, an order of suspension may be upheld by the trial court "only after the administrative record receives that 'independent judgment review.'" (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 398; see also *Elizabeth D. v. Zolin* (1993) 21 Cal.App.4th 347, 353 [trial court is "required to exercise its 'independent judgment in reviewing the administrative decision of the DMV'"].)

In the appellate court, the appropriate standard of review on a petition for writ of administrative mandate is the substantial evidence test. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824.) In cases where the trial court exercised its independent judgment on the evidence, the appellate court reviews the record to determine whether the trial court's findings are supported by substantial evidence. (*Ibid.*; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218; *Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 321.) In making that determination, "[w]e must ""resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision."" [Citation.]" (*Valiyee v. Department of Motor Vehicles* (1999) 74 Cal.App.4th 1026, 1031.) "Where the evidence supports more than one inference, we may not substitute our view of the evidence for the trial court's, and may overturn the trial court's findings of fact only if the evidence is insufficient to support those findings as a matter of law. [Citation.]" (*Ibid.*)

We review the trial court's ruling on a motion to augment the administrative record for abuse of discretion. (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1143; *Armondo v. Department of Motor Vehicles* (1993) 15 Cal.App.4th 1174, 1180.)

## II.     Denial of Motion to Augment the Administrative Record

Ellis first challenges the trial court's denial of her motion to augment the administrative record with the Usage Log. She contends that the Usage Log should have been admitted under Code of Civil Procedure section 1094.5, subdivision (e) because such evidence could not, in the exercise of reasonable diligence, have been presented by

her attorney at the administrative hearing. She also claims that the Usage Log should have been admitted under general principles of equity because it would exonerate her of the charged offense by demonstrating that she in fact complied with the requirements for chemical testing. We conclude that neither contention has merit.

### A. Relevant Law

"The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the record of the proceeding before the administrative agency. [Citation.]" (*Toyota of Visalia, Inc. v. New Motor Vehicle Bd.* (1987) 188 Cal.App.3d 872, 881; *Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 977 ["[i]n an administrative mandamus action, judicial review is limited to matters in the administrative record"].) Augmentation of the administrative record is permitted only within the strict limits set forth in Code of Civil Procedure section 1094.5, subdivision (e), which provides as follows: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case." (Code Civ. Proc., § 1094.5, subd. (e); *Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101; *Armondo v. Department of Motor Vehicles*, *supra*, 15 Cal.App.4th at p. 1180.)

Accordingly, in an administrative mandamus action, a trial court "may receive additional evidence only if that evidence 'in the exercise of reasonable diligence, could not have been produced or … was improperly excluded at the hearing before' the administrative agency." (*Sierra Club v. California Coastal Com*. (2005) 35 Cal.4th 839, 863; see also *Armondo v. Department of Motor Vehicles*, *supra*, 15 Cal.App.4th at p. 1180 ["[b]efore the court may properly consider evidence that was not presented at the administrative hearing, the petitioner must show the evidence could not have been

produced below had reasonable diligence been exercised"].)  "In the absence of a proper preliminary foundation showing that one of the exceptions noted in [Code of Civil Procedure] section 1094.5, subdivision (e) applies, it is error for the court to permit the record to be augmented. [Citation.]  Determination of the question of whether one of the exceptions applies is within the discretion of the trial court, and the exercise of that discretion will not be disturbed unless it is manifestly abused. [Citation.]"  (*Pomona Valley Hospital Medical Center v. Superior Court*, *supra*, 55 Cal.App.4th at p. 101.)

**B.      Ellis Did Not Satisfy the Requirements of Code of Civil Procedure Section 1094.5, Subdivision (e)**

In this case, the trial court acted within its discretion in denying the motion to augment the administrative record because Ellis failed to demonstrate that the proffered evidence could not, in the exercise of reasonable diligence, have been presented at the administrative hearing.  On appeal, Ellis does not dispute that the Usage Log was in existence at the time of the administrative proceeding and was available to either party through the Sheriff's Department's website.  She nevertheless argues that, because the attorney who represented her at the APS hearing did not know the Usage Log existed, he acted reasonably when he relied on the documents provided by the DMV as evidence establishing that Ellis did not complete a breath test.  As support for this argument, Ellis points to the declarations provided by two experienced DUI defense lawyers, including her current counsel, who opined that an attorney exercising reasonable diligence would not have looked for additional evidence concerning Ellis's breath test, but an attorney with expertise in the DUI and APS field likely would have sought out such evidence.

Yet, as the trial court observed in denying augmentation of the record, the declarations submitted by Ellis actually demonstrated that the Usage Log could have been presented at the administrative hearing through the exercise of reasonable diligence. Ellis's current counsel explained that, after reviewing the documents provided by the DMV to her former counsel, he directed his law clerk to search for additional breath test records.  The law clerk was able to easily obtain the Usage Log from the Sherriff's

10

Department's online database by searching by serial number and date range for the breathalyzer device that was used for Ellis's breath test. There is nothing in the record to suggest that Ellis's counsel in the administrative proceeding made any similar attempt to search for additional evidence; he simply concluded, based on the documents provided by the DMV, that no such evidence existed. However, the attorney's purported lack of expertise in the DUI field cannot excuse his lack of due diligence in presenting relevant evidence under Code of Civil Procedure section 1094.5, subdivision (e). For purposes of determining whether the requirements of the statute have been satisfied, the question is not whether the party seeking to introduce new evidence in a judicial proceeding had prior knowledge of its existence, but whether the party could have discovered and produced such evidence in the administrative proceeding by exercising reasonable diligence. Given that the Usage Log was readily obtainable through an online search, Ellis has failed to establish that she could not, with reasonable diligence, have presented the document at the administrative hearing.

Ellis also asserts that the Usage Log should have been admitted under Code of Civil Procedure section 1094.5, subdivision (e) as impeachment evidence to contradict the breath test results offered into evidence by the DMV at the administrative hearing. Ellis principally relies on the 1943 decision in *Dare v. Board of Medical Examiners* (1943) 21 Cal.2d 790, 799-800 (*Dare*) where the California Supreme Court concluded that a party in an administrative mandamus action would not be bound by the administrative record in the following four circumstances: (1) the party could object to evidence improperly admitted at the administrative hearing; (2) the party could reoffer evidence improperly excluded at the administrative hearing; (3) the party could introduce new evidence that could not, in the exercise of reasonable diligence, have been presented at the administrative hearing; and (4) the party could contradict or impeach the testimony of witnesses presented at the administrative hearing if their credibility was called into question in the mandamus proceeding.

However, the *Dare* decision predated the legislative enactment of Code of Civil Procedure section 1094.5 (Stats. 1945, ch. 868, § 1) which, as discussed, expressly limits

11

the admissibility of extra-record evidence to relevant evidence that either was improperly excluded or could not, in the exercise of reasonable diligence, have been introduced at the administrative hearing. (Code Civ. Proc., § 1094.5, subd. (e); see also *Schoenen v. Board of Medical Examiners* (1966) 245 Cal.App.2d 909, 914 ["[p]assage of section 1094.5, Code of Civil Procedure . . . subsequent to the *Dare* decision, largely codified the rules on admissibility of that decision except that it did not include the rule that impeaching evidence could be introduced in the trial court"].) Therefore, while newly discovered impeachment evidence may be admissible in a mandamus proceeding, the party seeking to introduce it first must establish that such evidence could not have been presented in the prior administrative proceeding through reasonable diligence. (See, e.g., *Hand v. Board of Examiners* (1977) 66 Cal.App.3d 605, 616 [trial court did not abuse its discretion in admitting extra-record impeachment evidence where petitioner made "a sufficient showing that [he] could not in the exercise of due diligence have anticipated the testimony of [his co-defendant] and therefore was unable to present impeaching evidence at the administrative hearing"]; *Mast v. State Board of Optometry* (1956) 139 Cal.App.2d 78, 88 ["mere attack on the credibility of a witness does not entitle a party, in the mandamus action, to call that witness for further examination and impeachment unless a showing is made . . . that he has available new impeaching evidence which he could not with reasonable diligence have produced before the board"].)

Here, Ellis clearly could have anticipated the DMV would present the documents prepared by Deputy Norville as evidence that she had failed to complete a chemical breath test. Those records were provided to Ellis by the DMV prior to the administrative hearing and her attorney reviewed them in preparation for the hearing. To the extent the DMV's records did not accurately reflect Ellis's complete breath test results, as she now claims, Ellis was afforded a full opportunity during the administrative hearing to impeach the credibility of the records with competent contrary evidence. Ellis's mere assertion that she did not know that such impeachment evidence existed is insufficient to meet the requirements of Code of Civil Procedure section 1094.5, subdivision (e).

12

## C.      Ellis Was Not Entitled To Equitable Relief

Alternatively, Ellis contends that, even if the statutory requirements for augmenting the administrative record were not satisfied, the trial court should have exercised its inherent equitable powers to admit the Usage Log into evidence. Citing *Curtin v. Department of Motor Vehicles* (1981) 123 Cal.App.3d 481 (*Curtin*), Ellis argues that equity demands that she should not suffer a suspension of her driver's license based on an erroneous act of the state. In *Curtin*, the trial court in an administrative mandamus action upheld the suspension of the plaintiff's driver's license for refusing to submit to a chemical test, but directed the DMV to give the plaintiff a five-month credit based on a prior erroneous suspension of his license. The DMV first notified the plaintiff of the error in the prior suspension while the mandamus proceeding for the current suspension was pending. (*Id*. at pp. 483-484.) The Court of Appeal concluded that, under Code of Civil Procedure section 1094.5, subdivision (e), evidence of the prior erroneous suspension "'could not have been produced . . . at [the] hearing' on the instant suspension" (*id*. at p. 485), and "was relevant to the equitable issues before the superior court" (*id*. at p. 486). Recognizing that "[o]ne's entitlement to a writ of mandate is largely controlled by *equitable principles*," the Court of Appeal reasoned that equity "'"will assert itself in those situations where right and justice would be defeated but for its intervention,"'" and based on the unique facts of the case, "right and justice would be defeated by the erroneous suspension of [the plaintiff's] driver's license." (*Id*. at p. 485.)

In this case, however, equitable principles do not support Ellis's position. First, unlike the extra-record evidence at issue in *Curtin*, the Usage Log could have been presented at the administrative hearing through the exercise of reasonable diligence. Second, evidence of the Usage Log, standing alone, does not exonerate Ellis of the charged offense nor does it establish that the device used in her chemical breath test was flawed. As the trial court noted, Ellis would need to present expert testimony to explain the meaning of the log's entries, the discrepancy between the log and the Datamaster printout receipts, and whether the two "Value 1" results that were recorded in the log could constitute a sufficient breath sample under the law. Third, even assuming the two

13

recorded values (0.236 and 0.238) were sufficient to meet the legal standard for a measurable breath sample, they would appear to support a finding that Ellis was driving under the influence of alcohol well over the legal limit when she struck another vehicle and a young pedestrian. While Ellis reasons that the length of a suspension is shorter for a first-time DUI offense (§ 13353.3) than for a first-time refusal to submit to chemical testing offense (§ 13353), she has not demonstrated how "right and justice would be defeated" by a lawful suspension of her driver's license. (*Curtin*, *supra*, 123 Cal.App.3d at p. 485.) Considering the totality of the facts in this case, the trial court did not abuse its discretion in denying the motion to augment the administrative record.

### III.    Denial of Petition for Writ of Administrative Mandate

Ellis also challenges the trial court's denial of her writ petition. She argues that, even if the Usage Log is not considered, the evidence presented at the administrative hearing proved that she did not refuse to submit to chemical testing, but rather was legally entitled to submit to a urine test based on the unavailability of both the breath test and blood test. She also asserts that the evidence was insufficient to establish that she was advised of the consequences of refusing to submit to a chemical test because the reports completed by Deputy Norville were inconsistent and thus unreliable. We conclude that the court properly denied Ellis's writ petition.

#### A.    Relevant Law

Under California's implied consent law, if a person is lawfully arrested for driving under the influence of alcohol or drugs, he or she is deemed to have given consent to the chemical testing of his or her blood or breath to determine blood alcohol content. (§ 23612, subd. (a)(1)(A).) A person lawfully arrested for driving under the influence of alcohol "has the choice of whether the test shall be of his or her blood or breath," and must be informed of that choice by the arresting officer. (§ 23612, subd. (a)(2)(A).) The officer also must inform the person arrested that the failure to submit to, or failure to complete, the required chemical testing will result in a fine and suspension or revocation of his or her driving privilege. (§ 23612, subd. (a)(1)(D).) "If the person arrested either

14

is incapable, or states that he or she is incapable, of completing the chosen test, the person shall submit to the remaining test." (§ 23612, subd. (a)(2)(A).) "If both the blood and breath tests are unavailable, the person shall be deemed to have given his or her consent to chemical testing of his or her urine and shall submit to a urine test." (§ 23612, subd. (d)(2).) A person who refuses to submit to, or fails to complete, a chemical test under section 23612 is subject to the suspension of his or her driving privilege, among other sanctions. (§ 13353, subd. (a)(1).)

In an administrative hearing before the DMV based on a suspension for refusing to submit to or complete a chemical test, the DMV shall sustain the order of suspension if it determines by a preponderance of evidence that (1) a "peace officer had reasonable cause to believe that the person had been driving a motor vehicle" under the influence of alcohol or drugs, (2) "the person was placed under arrest," (3) "the person refused or failed to complete a chemical test or tests," and (4) subject to certain exceptions, "the person was told that his or her privilege to operate a motor vehicle would be suspended or revoked if he or she refused to submit to, and complete, the required testing." (§§ 13557, subd. (b)(1), 13558, subd. (c)(1).) "If any one of the required findings is deficient, the DMV's action suspending the license must be overturned. [Citation.]" (*Hughey v. Department of Motor Vehicles* (1991) 235 Cal.App.3d 752, 758.)

"The question whether a driver 'refused' a test within the meaning of the [implied consent] statute is a question of fact. [Citation.]" (*Cahall v. Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 497.) To comply with the statute, the "'driver should clearly and unambiguously manifest the consent required by the law. Consent which is not clear and unambiguous may be deemed a refusal.' [Citation.]" (*Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 82.) Additionally, "'[i]n determining whether an arrested driver's conduct amounts to a refusal to submit to a test, the court looks not to the state of mind of the arrested driver, but to "the fair meaning to be given [the driver's] response to the demand he submit to a chemical test." [Citations.]' [Citation.]" (*Id.* at pp. 82-83; see also *Carrey v. Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270 ["determinative factor as to whether there is a refusal is not

15

the arrestee's subjective state of mind, but rather the objective, fair meaning to be distilled from his words and conduct"].) A qualified or conditional consent constitutes a refusal. (*Carrey v. Department of Motor Vehicles*, *supra*, at pp. 1270-1271.)

Moreover, "[c]ompliance with the implied consent law [citation] consists of completing, not merely attempting, one of the . . . blood alcohol content tests offered." (*Miles v. Alexis* (1981) 118 Cal.App.3d 555, 559.) While an arrested driver "may choose the type of test, the driver's obligation does not end when he [or she] has expressed such a choice. [The driver] must go further and *submit* to the test. (*Quesada v. Orr* (1971) 14 Cal.App.3d 866, 870.) "It has also been held, consistent with the purpose of the implied consent law, that a driver who has some specific and potentially valid objection to all or any part of the procedure involved in a particular chemical test must articulate that objection. [Citation.]" (*Butler v. Department of Motor Vehicles* (1981) 115 Cal.App.3d 913, 917.) The driver must state his or her reasons for refusing to complete the selected test with "clearness sufficient to permit the officer or officers to decide upon the validity of [the] protest and if it is reasonable to do so, to take steps to meet the objection." (*Wegner v. Department of Motor Vehicles* (1969) 271 Cal.App.2d 838, 841.)

### B.      Ellis Refused to Submit to the Required Chemical Testing

Because Ellis was arrested for driving under the influence of alcohol, her choice of tests was statutorily limited to either a breath test or a blood test unless both tests were unavailable. (§ 23612, subd. (a)(2)(A).) Ellis contends that a breath test was unavailable because she was incapable of completing it. She notes that she submitted to the breath test each time it was administered to her and blew forcefully into the mouthpiece as directed, but the device nevertheless recorded an insufficient or invalid sample after each testing sequence. Ellis claims that a blood test was unavailable because she stated that she was incapable of completing it. She reasons that she told Deputy Norville that her veins were bad when he asked her to submit to a blood test and that such statement was not a refusal to take the test, but rather an explanation as to why she was incapable of doing so. According to Ellis, once both a breath test and a blood test were determined to

16

be unavailable, the requirement for a urine test was triggered and she unambiguously agreed to submit to that remaining test.

However, as the Court of Appeal observed in *Butler v. Department of Motor Vehicles*, *supra*, 115 Cal.App.3d 913, "[t]he provision permitting an individual 'incapable' of completing a chosen test an opportunity to make another choice contains neither a definition of 'incapable' nor any indication that the word has anything other than its common or ordinary meaning. [Citation.] In common parlance 'incapable' means simply 'lacking capacity, ability, or qualification' [citation]: The word normally connotes a *physical* or *intellectual* limitation such as, for relevant example, hemophilia in one asked to give a blood sample. The word does *not* connote a voluntarily self-imposed limitation." (*Id*. at p. 916.) Because "[t]he implied consent law is intended 'to obtain the best evidence of blood alcohol content at the time of the arrest' [citation] by means of securing 'the *civil* cooperation of all persons privileged to drive' [citation]," construing the word 'incapable' as used in the implied consent law "in its general and commonly understood sense is consistent with the general policy underlying the statute." (*Ibid*.)

The evidence presented in this case was sufficient to support a finding that Ellis was not incapable of completing a chemical breath test, but rather intentionally frustrated the administration of the test by "blowing past the mouthpiece" during each testing sequence. It is settled law that a driver cannot, by his or her own actions, frustrate the administration of a chemical test, and a deliberate failure to complete the selected test constitutes a refusal under section 13353. (See *Garcia v. Department of Motor Vehicles*, *supra*, 185 Cal.App.4th at pp. 83-84 [driver's failure to complete breath test by ineffectually blowing into mouthpiece and then refusing to try any further was sufficient to support finding that he refused to submit to test]; *Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1573-1574 [driver's failure to complete breath test by not blowing forcefully enough into mouthpiece in each of six attempts was sufficient to support finding that he refused to submit to test].) Yet even assuming that Ellis was incapable of completing the breath test, she was required by law to submit to the remaining available test, which in this case was a blood test. (§ 23612, subd.

17

(a)(2)(A).)  Deputy Norville twice asked Ellis if she would submit to a blood test, and each time, Ellis refused.  (See *White v. Department of Motor Vehicles* (2011) 196 Cal.App.4th 794, 800 [where driver was incapable of completing breath test and refused to submit to blood test, "she placed herself within the ambit of the sanction required under the implied consent law"]; *Quesada v. Orr*, *supra*, 14 Cal.App.3d at p. 871 [where driver was incapable of completing urine test and refused to submit to remaining available tests, he "brought upon himself the penalty of the statute"].)

Contrary to Ellis's contention on appeal, there was also substantial evidence to support the trial court's finding that Ellis was not incapable, and did not state that she was incapable, of completing a chemical blood test.  None of the evidence presented by Ellis at the administrative hearing showed that she had any type of medical condition that precluded her from submitting to a blood test.  She merely testified that it was difficult at times for medical personnel to find her veins during a routine blood draw which would make the process painful.  The record also reflects that, in response to Deputy Norville's requests that she submit to a blood test, Ellis either stated that her veins were bad or that she was afraid of needles.  While such statements certainly demonstrate that Ellis was unwilling to submit to a blood test, they do not, on their face, establish that she was incapable of doing so.  Moreover, as the officer responsible for administering the chemical test to Ellis, Deputy Norville had discretion to determine whether a particular test was feasible and available.  (*White v. Department of Motor Vehicles*, *supra*, 196 Cal.App.4th at p. 799; *Smith v. Department of Motor Vehicles* (1986) 179 Cal.App.3d 368, 375.)  Given the vagueness of Ellis's stated reasons for objecting to a blood test, Deputy Norville reasonably could have determined that a blood test was available and that Ellis simply was refusing to submit to it.

In sum, Ellis's unwillingness to submit to a blood test did not render the test unavailable within the meaning of section 23612.  Ellis therefore was not entitled to request a urine test and her willingness to submit to that particular test is not relevant to the determination of whether she complied with the statutory requirements for chemical

18

testing. Under these circumstances, the trial court's finding that Ellis refused to submit to, or failed to complete, a chemical test was supported by substantial evidence.

### C. Ellis Was Properly Admonished About a Chemical Test Refusal

Ellis also argues that she was not properly admonished about the consequences of refusing to submit to a chemical test as required by section 23612. However, the record reflects that Deputy Norville completed and signed under penalty of perjury the DS 367 form which included, in pertinent part, the following admonition: "You are required by state law to submit to a PAS (DUI Probation) or other chemical test to determine the alcohol and/or drug content of your blood. [¶] . . . Because I believe you are under the influence of alcohol, you have a choice of taking a breath or blood test. [¶] . . . If you refuse to submit to, or fail to complete a test, your driving privilege will be suspended for one year or revoked for two or three years. . . ."

Deputy Norville specifically noted in the DS 367 form that he admonished Ellis on April 23, 2011 at 11:45 a.m. in Lakewood, California. He also stated in his arrest report that, after placing Ellis under arrest and transporting her to the Lakewood station, he "advised Ellis regarding submitting to a chemical test." Although Ellis testified at the administrative hearing that she not know what a chemical test refusal was until a friend explained it to her, she did not deny that she was given the admonition by Deputy Norville, nor did she present any evidence that her purported confusion about the consequences of a refusal once she returned home was caused by the deputy.

In support of her argument that she was not properly admonished, Ellis asserts that the DS 367 form is unreliable when examined in the entire context of the documents that Deputy Norville prepared. In particular, Ellis points to alleged inconsistencies in the documents about the exact timing of events. For instance, Ellis notes that the DS 367 form indicates that Deputy Norville read the admonition at the same time he arrested her, while his arrest report states that he arrested Ellis, transported her to the Lakewood station, and then advised her about submitting to a chemical test. However, none of the minor time discrepancies identified by Ellis rebuts Deputy Norville's sworn statement

19

that he read the admonition to Ellis prior to administering a chemical test, that Ellis selected but failed to complete a breath test, and that Ellis refused to submit to a blood test. Based on this record, the trial court's finding that Ellis was advised of the consequences of refusing to submit to chemical testing was supported by substantial evidence. The trial court accordingly did not err in denying Ellis's writ petition.

## DISPOSITION

The trial court's order denying Ellis's petition for writ of administrative mandate and motion to augment the administrative record is affirmed. The DMV shall recover its costs on appeal.

ZELON, J.

We concur:

WOODS, Acting P. J.

SEGAL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20