Filed 10/24/22  UL Chula Two v. City of Chula Vista CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UL CHULA TWO LLC, | D079215 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2020-00041554-CU-MC-CTL) |
| CITY OF CHULA VISTA et al. | |
| Defendants and Respondents; | |
| MARCH AND ASH CHULA VISTA, INC. et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Gary K. Brucker, Jr., Anastasiya Menshikova for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Alena Shamos, Matthew C. Slentz for Respondent City of Chula Vista and the Chula Vista City Manager.

Allen Matkins Leck Gamble Mallory & Natsis, Heather S. Riley, Rebecca Williams for Real Party in Interest March and Ash Chula Vista, Inc.

Tencer Sherman, Philip C. Tencer for Real Party in Interest TD Enterprise.

In accordance with a recently-enacted ordinance, UL Chula Vista (UCV) applied for one of a limited number of licenses offered by the City of Chula Vista (City) to operate a retail cannabis store. The City rejected UCV's application because the company's principal had been involved in a medical cannabis operation deemed unlawful by the City of San Diego, which was an excluding criteria under the new regulations created by the ordinance. UCV unsuccessfully appealed to the City. UCV then brought a petition for writ of administrative mandate in the superior court challenging the City's decision. The court denied the petition and entered judgment against UCV.

On appeal, UCV argues that the City abused its discretion in rejecting its application by misinterpreting its regulations and considering hearsay evidence, and that the City violated its due process rights. UCV also argues that the trial court erred by denying its request to consider extra-record evidence. As we explain, we reject each of UCV's arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2018, the City enacted Ordinance No. 3418, which added Chapter 5.19 to the Chula Vista Municipal Code. The purpose of the new regulations was "to mitigate the negative impacts brought by unregulated Commercial Cannabis Activity." Chapter 5.19 established a mandatory license program for engaging in "Commercial Cannabis Activity," as defined by the regulations. The regulations limit the number of cannabis retailers in the City to twelve, three for each of the City's four council districts, and also establish a phased application process for obtaining a license to operate one

of the eight permitted retail operations. (Chula Vista Mun. Code, §§ 5.19.040 & 5.19.050.)

The first phase consisted of an application showing compliance with certain requirements, including experience managing a lawful commercial cannabis business or regulated pharmaceutical business, ownership experience, sufficient liquid assets and business plan, and each owner and officer of the operation submitting to fingerprinting and a background check by the City's police department. (Chula Vista Mun. Code, § 5.19.050, subd. (A).) In addition, applicants were required to provide "[a] statement, under penalty of perjury … that he/she has not conducted, facilitated, caused, aided, abetted, suffered, or concealed unlawful Commercial Cannabis Activity in the City or any other jurisdiction." (*Id.,* subd. (A)(1)(j).)

After the submission of the application, the regulations direct a review of the applications by the City's Finance Director and Chief of Police. (Chula Vista Mun. Code, § 5.19.050, subd. (A)(4) & (5).) Those officials then have discretion to reject applications for specified reasons, including if (1) "[t]he Applicant, or any Owner of the Commercial Cannabis Business, Officer, or Manager has been adversely sanctioned or penalized by the City, or any other city, county, or state, for a material violation of State or local laws or regulations related to Commercial Cannabis Activity or to pharmaceutical or alcohol licensure" and (2) "[t]he Applicant, or any Owner of the Commercial Cannabis Business, Officer, or Manager has conducted, facilitated, caused, aided, abetted, suffered, or concealed unlawful Commercial Cannabis Activity in the City or any other jurisdiction." (Chula Vista Mun. Code, § 5.19.050, subd. (A)(5)(f) & (g).) If an applicant is rejected during this phase, the regulations provide for an appeal to the City Manager. (Chula Vista Mun. Code, § 5.19.050, subd. (B)(6).)

3

In 2019, UCV applied for a storefront retail license. The application included a letter from UCV's counsel explaining that UCV's sole shareholder, William Senn, had submitted the required affirmation that he " 'has not conducted, facilitated, caused, aided, abetted, suffered, or concealed unlawful Commercial Cannabis Activity in the City or any other jurisdiction.' " However, counsel also explained that Senn had entered a stipulated judgment with the City of San Diego in *City of San Diego v. The Holistic Café, Inc. et al.*, Case No. 37-2012-00087648-CU-MC-CTL, and that the judgment was related to allegations " 'that Senn, along with other defendants, operated a medical marijuana dispensary in the City of San Diego in violation of local law.' "[1]

On June 10, 2019, the City notified UCV it was scheduled for an interview and requested payment of fees to proceed with background checks. The letter warned UCV "that although [its] application [was] being forwarded for further assessment within Phase One of City's application process, [the] application ha[d] not been approved at [that] time." The letter further stated that the "City reserve[d] the right to reject or approve any and all applications based on the standards set forth in all applicable laws and regulations, or otherwise in its sole discretion, taking into account the health, safety and welfare of the community, and in accordance with its general police powers authority."

On May 6, 2020, the City issued a notice of decision rejecting UCV's application for a retail license. As reasons for the rejection, the notice explained: (1) that Senn had been sanctioned by the City of San Diego for a material violation of state or local laws or regulations related to commercial

---

[1] UCV's application included Senn's resume, describing the Holistic Café as "[o]perating in Hillcrest without issue since its inception."

4

cannabis activity, citing Chula Vista Municipal Code section 5.19.050, subdivision (A)(5)(f); and (2) that Senn had been "involved in unlawful Commercial Cannabis activity in the City of San Diego from approximately 2010 to 2012," citing section 5.19.050, subdivision (A)(5)(g). (Italics omitted.)

In accordance with the Chula Vista Municipal Code, on May 21, 2020, UCV appealed the denial of its application. On May 26, 2020, the City notified UCV that a hearing was set for June 10, 2020.[2] The City also provided UCV with the documentation that it had reviewed in reaching its decision to deny the application and that it intended to use at the appeal hearing. The materials included the City's scoring matrix and several documents uncovered by a Public Records Act request during the background check investigation concerning the Holistic Café matter.

UCV filed an appeal brief in advance of the hearing, asserting that (1) the reasons given for rejecting its application were too vague, violating UCV's due process rights; (2) Senn could not have been sanctioned by the City of San Diego or involved in unlawful "Commercial Cannabis activity" from 2010 to 2012 because there were no laws or regulations governing such activity, as defined by the Chula Vista Municipal Code, at that time in the City of San Diego; and (3) there was no relevant, admissible evidence that Senn was sanctioned or penalized by the City of San Diego for engaging in unlawful activity because the Holistic Café matter was settled by a stipulated judgment in which Senn admitted no wrongdoing. UCV also asked the City to set aside the rejection on equitable grounds based on the age of the Holistic Café matter and the fact that the law surrounding medicinal marijuana sales was unsettled at the time of the stipulated judgment.

---

[2] The City subsequently amended its notice to conduct the hearing by video conference due to the Covid-19 pandemic.

5

The hearing took place as scheduled. City Manager Gary Halbert acted as hearing officer and was advised by Deputy City Attorney Simon Silva. Senn, represented by counsel, appeared for UCV. The City was represented by Deputy City Attorney Megan McClurg. McClurg offered testimony by three witnesses, Chula Vista Police Department Sergeant Mike Varga, Developmental Services Director Kelly Broughton, and Matthew Eaton, whose employer, HdL Companies, developed the scoring criteria used by the City in its application process. Through Varga, the City introduced the documents it obtained concerning the Holistic Café matter. Varga explained that during the background investigation, Senn was identified as an owner operator of the Holistic Café, which prompted a Public Records Act request to the City of San Diego for related information.

The Public Records Act request uncovered the City of San Diego's notice of violation to the Holistic Café, which asserted the business was an unlawful, unpermitted medical marijuana dispensary. The notice also stated that the owners of the business had misrepresented its activity for purposes of its business tax certificate as the sale of herbal remedy teas and health products. The notice set forth various violations of the municipal code related to the unlawful operation of the dispensary and included a demand to immediately cease operations. The City introduced photographs of the Holistic Café, showing signage indicative of medical marijuana sales. The City also introduced an email exchange between the City of San Diego's building inspector and the Holistic Café's counsel in which the business declined an inspection request.

Also through Varga, the City introduced a copy of the unlawful detainer complaint initiating the legal proceedings to evict Holistic Café filed by the property's owner, as well as the City of San Diego's complaint seeking

6

civil penalties and a permanent injunction requiring the business to cease operating the marijuana dispensary in violation of the municipal code. The complaint named Senn as a defendant and described him as the president and/or chief operating officer of the business. The complaint alleged that City officials verified the property was being operated as a marijuana dispensary and asserted the defendants were "blatantly and willfully in violation of the [San Diego Municipal Code]."

Also through Varga, the City introduced the stipulated judgment ending the City of San Diego's lawsuit against the Holistic Café. The judgment contained a provision stating, "[n]either this Stipulated Judgment nor any of the statements or provisions contained herein shall be deemed to constitute an admission or an adjudication of any of the allegations of the Complaint." The judgment imposed a permanent injunction enjoining Senn from operating a marijuana dispensary and required closure of the Holistic Café. The judgment also required payment of $20,000 in civil penalties and additional fees.

UCV presented no evidence at the hearing. UCV's counsel, however, objected to the documents that the City presented concerning the Holistic Café matter on the grounds they were unreliable hearsay, not properly authenticated, lacked foundation, and were irrelevant. The hearing officer overruled the objections, noting after each ruling that the documents would be entered into evidence subject to his determination of the documents' weight.

After the presentation of evidence and arguments by counsel, the hearing officer took the matter under submission. On August 26, 2020, Halbert issued his decision rejecting UCV's appeal. Specifically, he found no due process violation since the denial and documentation provided to UCV by

7

the City made clear that the rejection of UCV's application was based on Senn's involvement in the Holistic Café matter. Halbert also rejected UCV's argument that there were no laws in the City of San Diego related to cannabis dispensaries, which UCV asserted precluded the application of Chula Vista Municipal Code section 5.19.050, subdivisions (A)(5)(f) and (g). Halbert reiterated his decision to overrule UCV's objections to the evidence presented by the City, noting the regulations made clear that the formal rules of evidence did not apply to the City's review of the decision to reject UCV's application. Halbert also found the City had adequately established the documents were reliable and relevant to its determination. Finally, Halbert denied UCV's request that he exercise discretion to overrule the City's determination, noting that UCV presented no evidence in support of its request.

UCV filed its petition for writ of mandate in the Superior Court on November 13, 2020. Therein, UCV asserted a writ was required because: (1) civil zoning violations (the unlawful activity alleged by the City of San Diego in its civil complaint) are not disqualifying under the Chula Vista Municipal Code as a matter of law; (2) the City violated UCV's due process rights by not disqualifying its application earlier, by providing insufficient notice of the hearing, and by having the City Attorney's office act both as advisor to the hearing officer and advocate for the City in the proceeding; and

(3) substantial evidence did not support Halbert's decision because all of the evidence presented by the City was inadmissible hearsay.[3]

Following briefing and a hearing, the trial court issued an order rejecting each of UCV's arguments and denying the petition in its entirety. The court found that UCV had failed to establish that the "operation of a medicinal marijuana storefront does not fall under the definition of 'Commercial Cannabis Activity.' " Additionally, the court concluded ample evidence supported the City's rejection of its application and that UCV had not shown that the hearsay evidence was improperly considered by the City or the hearing officer. With respect to UCV's due process arguments, the court found there was no evidence to support UCV's assertion that McClurg had acted both as advocate and advisor in the same proceeding and that it had waived its argument concerning the hearing notice by not objecting to the City.

After the court entered judgment in favor of the City, UCV filed its notice of appeal.

DISCUSSION

I

*Standard of Review*

"Review of an administrative decision made as a result of a proceeding in which a hearing is required is governed by Code of Civil Procedure

---

[3]    The petition also requested an injunction, which was eventually denied, preventing the City from issuing licenses to other operators. UCV also amended its petition to add its competitors for the license, real parties March and Ash Chula Vista, Inc. and TD Enterprise, LLC, as defendants. After briefing in this case was complete, the City filed a request that this court take judicial notice of the licenses it issued to the real parties after the trial court denied UCV's petition. Because we find these documents irrelevant to the issues on appeal, the request is denied.

9

section 1094.5. The standard of review is abuse of discretion. (*Id.*, subd. (b).) Subdivision (c) of section 1094.5 provides that where, as here, the proceeding does not involve a fundamental vested right, 'abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' " (*Hauser v. Ventura County Bd. of Supervisors* (2018) 20 Cal.App.5th 572, 575.) "Under this standard, the trial court will affirm the administrative decision if it is supported by substantial evidence from a review of the entire record, resolving all reasonable doubts in favor of the findings and decision." (*M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 616.)

"To the extent that the administrative decision rests on the hearing officer's interpretation or application of the [o]rdinance, a question of law is presented for our independent review." (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 219.) While "[t]he interpretation of statutes and ordinances 'is ultimately a judicial function[,]' … "the hearing officer's interpretation of the [o]rdinance is entitled to deference. 'The courts, in exercising independent judgment, must give appropriate deference to the agency's interpretation.' " (*Ibid.*) " '[B]ecause the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this "expertise," expressed as an interpretation …, that is the source of the presumptive value of the agency's views.' " (*Ibid.*)

II

*The City's Findings Were Supported by Substantial Evidence and Those Findings Supported Its Decision*

UCV contends that the City's findings were not supported by substantial evidence because none of the evidence relied on by Halbert was

admissible. It further argues that there was no evidence that Senn had been adversely sanctioned for a violation of law related to commercial cannabis activity because the stipulated judgment entered by Senn disclaimed any liability. In addition, UCV contends there was no evidence of unlawful commercial cannabis activity because that legal phrase did not exist until 2016. As we explain, we reject UCV's narrow interpretation of the Chula Vista Municipal Code and find no abuse of discretion in the City's hearing officer's decision.

A

*Admissibility of Evidence*

UCV first argues that the documentation obtained by the City through its Public Records Act request was unauthenticated hearsay that was improperly relied on by the hearing officer. As an initial matter, the Evidence Code does not apply to this administrative proceeding. Rather, the City's hearings are governed by general principles of due process and its own regulations. In particular, the regulation the City adopted "to clarify and facilitate implementation of [Chula Vista Municipal Code] Chapter 5.19," states that an appeal challenging the City's rejection of an application "shall not be conducted according to technical rules of procedure and evidence applicable to judicial proceedings." Rather, "[e]vidence that might otherwise be excluded under the California Evidence Code may be admissible if it is relevant and of the kind that reasonable persons rely on in making decisions. Irrelevant and unduly repetitious evidence shall be excluded."

Thus, by its terms, the City's regulation authorized the use of hearsay evidence in the administrative appeal pursued by UCV. (See *In re Lucero L.* (2000) 22 Cal.4th 1227, 1244 [Noting that the "admissibility of hearsay evidence in various administrative contexts has long been authorized by

11

statute."].)  Therefore, contrary to UCV's contention, the hearing officer's reliance on the documents was not improper.  The documents at issue, consisting of court filings in the City of San Diego's lawsuit against Senn and the unlawful detainer suit pursued by the landlord of the Holistic Café, are not inherently unreliable.  Rather, they are documents that "reasonable persons rely on in making decisions."

To support its evidentiary arguments, UCV relies on a case involving an agency that, unlike here, was not authorized to use hearsay evidence.  In *Walker v. City of San Gabriel* (1942) 20 Cal.2d 879 (*Walker*), the court reversed a judgment entered after the denial of a petition for writ of mandamus to correct the revocation of a license to operate an automobile wrecking business.  At the hearing on the revocation, which was required by ordinance, the City of San Gabriel provided only a hearsay police statement alleging various violations of the license's conditions.  (*Id*. at p. 880.)  The Supreme Court reversed the judgment, holding the city had failed to carry its burden to show its revocation was based on the operator's violation of a term or condition of the license because the hearsay alone was not "substantial evidence to support" the ruling.  (*Id*. at p. 881.)  The court noted that "hearsay, *unless specially permitted by statute*, is not competent evidence to that end."  (*Ibid.,* italics added.)  In contrast, the City's regulations here specifically permit hearsay evidence so long as it "is relevant and of the kind that reasonable persons rely on in making decisions."[4]

---

4    UCV also cites Government Code section 11513, subdivision (d).  The statute, contained in the Administrative Procedure Act (APA, Gov. Code, §§ 11400, et seq.), applies primarily to administrative proceedings of the State.  The APA does not apply to local agencies, like the City, except to the extent its provisions are made applicable to them by statute or when the local agency elects to be governed by the APA.  (Gov. Code, §§ 11410.30, subd. (b), 11410.40.)  Neither exception applies in this case.

We also note that UCV failed to offer any evidence to refute the information contained in the documents and instead chose to stand on its evidentiary objections and regulatory interpretation arguments. Unlike the petitioner in *Walker*, which involved the revocation of a vested right, UCV had the evidentiary burden of showing that the City's decision to reject its application was error. UCV's failure to introduce any evidence in support of its assertion that the City's decision was arbitrary frustrates its evidentiary argument. Because it did not establish any affirmative case, UCV cannot show the hearing officer's decision to consider the hearsay evidence was prejudicial. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107 ["the California Constitution … expressly preclude[s] reversal absent prejudice"].)

B

*Commercial Cannabis Activity*

UCV next contends that the City's decision must be overturned because, even if the hearsay evidence was properly relied on by Halbert, there was no evidence showing Senn was "adversely sanctioned or penalized by the City, or any other city, county, or state, for a material violation of state or local laws or regulations related to Commercial Cannabis Activity." UCV argues that the hearing officer found "there were *no* laws related to commercial cannabis activity in the state or city … until 2016, four years after the City of San Diego entered into a stipulated judgment in *Holistic Café*." Therefore, Halbert had no basis to reject UCV's application under Chula Vista Municipal Code section 5.19.050, subdivision (A)(5)(f), "which requires a material violation of a law or regulation *related to* commercial cannabis activity."

First, UCV's assertion that Halbert found there were no laws in San Diego regulating commercial cannabis activity is a distortion of the decision.

13

Halbert explains clearly that although "[s]pecific state and local licensing of cannabis dispensaries went into effect in 2016," prior to that time San Diego regulated cannabis dispensaries "via zoning laws and in particular in the City of San Diego as unpermitted businesses."[5]

Next, UCV's interpretation of the Chula Vista Municipal Code imports a requirement into the regulations that does not exist and fails to account for the basis of the complaint filed by the City of San Diego against Senn, which asserted that operation of a medical marijuana dispensary within San Diego was unlawful because the property where the dispensary was located was not zoned for such activity. UCV argues that the zoning regulations at issue in that case are unrelated to commercial cannabis activity. We agree with the City, the hearing officer, and the trial court, that UCV's interpretation of the regulations is too narrow.

The regulation defines "Commercial Cannabis Activity" as "the commercial Cultivation, possession, furnishing, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery or sale of Cannabis or Cannabis Products." (Chula Vista Mun. Code, § 5.19.020.) The administrative record contains unrefuted evidence that the Holistic Café was operating as an unpermitted medical marijuana dispensary that *sold cannabis*, and that the operation was unlawful under the City of San Diego's municipal code. The fact that the zoning regulations themselves did not refer specifically to commercial cannabis activity does not mean there were no laws related to such activity. Rather, as the City and real parties assert in their brief, local governments have the constitutional authority "to determine the allowable land uses

---

5    UCV's request for judicial notice of the City of San Diego's municipal code and zoning ordinance is granted.

within their jurisdictions" and when a use "violates applicable zoning rules, the responsible agency may obtain abatement—i.e., removal of the violation and restoration of legal use." (*IT Corp. v. Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 89.)

Under permissive zoning, "where a particular use of land is not expressly enumerated in a city's municipal code as constituting a *permissible* use, it follows that such use is *impermissible*." (*City of Corona v. Naulls* (2008) 166 Cal.App.4th 418, 433.) As the City of San Diego's complaint stated, "[t]he operation or maintenance of a marijuana dispensary [was] not a permitted use in any zone designation under the [municipal code]." Thus, Senn's operation of the dispensary, which involved the commercial enterprise of selling medical cannabis, was a material violation of the City of San Diego's regulations, which related to commercial cannabis activity as defined by the Chula Vista Municipal Code.

C

*Stipulated Judgment*

UCV also asserts there was no evidence of a violation of a law or regulation related to commercial cannabis activity because the stipulated judgment entered in the Holistic Café matter denied any wrongdoing by Senn. As noted, the judgment contained a provision stating that it did not "constitute an admission or an adjudication of any of the allegations of the

[City of San Diego's] Complaint."[6] The City and real parties respond that the provision disclaiming liability in the stipulated judgment does not negate the fact that the judgment imposes specific sanctions against UCV, including requiring the closure of the Holistic Café and the imposition of both an injunction prohibiting Senn from operating a marijuana dispensary and civil penalties.

The City correctly points out that the Chula Vista Municipal Code does not require a judgment or admission of unlawful conduct for an applicant to be disqualified thereunder. Rather, the regulations disqualify applicants both (1) who have been "adversely sanctioned or penalized … for a material violation of State or local laws or regulations related to Commercial Cannabis Activity" (Chula Vista Mun. Code, § 5.19.050, subd. (A)(5)(f)) and (2) those who have "conducted, facilitated, caused, aided, abetted, suffered, or concealed unlawful Commercial Cannabis Activity in the City or any other

---

6      UCV asserts Senn did not admit liability "to a violation of the civil zoning laws" because at the time "there was significant uncertainty about whether local governments could use zoning regulations to ban legal medicinal cannabis storefronts." UCV explains that after the stipulated judgment, the California Supreme Court resolved that uncertainty in *City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729 (*Riverside*), which held that California's Compassionate Use Act and Medical Marijuana Program Act did not preempt local zoning bans on medical marijuana dispensaries. (*Id.* at p. 738.) UCV also points out that the stipulated judgment allowed amendments for future changes to the law and asserts that the judgment was amended on May 3, 2019 to allow the defendants in that case to engage in cannabis activities. The amended judgment was submitted as part of UCV's appellant's appendix and is contained within its request for judicial notice, which was denied by the trial court. UCV requests that we take judicial notice of the amended judgment and the articles of incorporation for the Holistic Café. The request is denied as irrelevant to our decision and outside of the administrative record.

16

jurisdiction" without the requirement of a sanction or penalty (*id.*, subd. (A)(5)(g)).

Even though Senn continues to assert that his operation of the Holistic Café was lawful—a possible outcome in the earlier litigation that was later foreclosed by the Supreme Court's decision in *Riverside*—and that the stipulated judgment was not a penalty or adverse sanction, the evidence submitted by the City supported the hearing officer's determination that Senn had conducted unlawful commercial cannabis activity. This evidence brought Senn within the second category of disqualification. Specifically, the photographs of the Holistic Café indicating medical cannabis sales, the unlawful detainer action filed by the business's landlord, and the City of San Diego's notice of violation and complaint for civil penalties, all supported the hearing officer's finding that Senn had engaged in unlawful cannabis activity. As discussed, UCV presented no evidence to refute this finding. Thus, Halbert did not abuse his discretion by finding UCV failed to carry its burden to show the City acted impermissibly by rejecting its application.

D

*Medical Marijuana*

UCV argues that disqualifying unlawful commercial cannabis activity under the Chula Vista Municipal Code does not include the operation of a dispensary for *medical-use* cannabis. The City and real parties respond that because this argument was not raised in the administrative proceedings, UCV failed to exhaust its remedies and review by this court is not available. Alternatively, they assert the distinction advanced by UCV is not supported

17

by the language of the Chula Vista Municipal Code. We agree with the City and real parties on both accounts.

The exhaustion of administrative remedies doctrine requires "[a]dministrative agencies [to] be given the opportunity to reach a reasoned and final conclusion on each and every issue upon which they have jurisdiction to act before those issues are raised in a judicial forum." (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 510.) "The rule is a jurisdictional prerequisite in the sense that it 'is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of stare decisis, and binding upon all courts.' " (*Citizens for Open Government v. City of Lodi* (2006) 144 Cal.App.4th 865, 874.)

Under the doctrine, issues not presented in the administrative proceedings cannot be raised for the first time on review. The exhaustion doctrine "recognizes and gives due respect to the autonomy of the executive and legislative branches, and can secure the benefit of agency expertise, mitigate damages, relieve burdens that might otherwise be imposed on the court system, and promote the development of a robust record conducive to meaningful judicial review. [Citations.] Additionally, absent an exhaustion rule, a litigant might have an incentive to 'sandbag'—in other words, to 'avoid securing an agency decision that might later be afforded deference' by sidestepping an available administrative remedy." (*Hill RHF Housing Partners, L.P. v. City of Los Angeles* (2021) 12 Cal.5th 458, 478–479.) Further, the doctrine applies even if the only issue is legal rather than factual. (*Contractors' State License Bd. v. Superior Court (Black Diamond Elec., Inc.)* (2018) 28 Cal.App.5th 771, 782–783.)

Contrary to UCV's assertion, it did not argue in its administrative appeal that the sale of medicinal marijuana was outside the Chula Vista Municipal Code's disqualifying factors to receive a retail sales license. Rather, it argued that because no law specifically related to commercial cannabis activity existed at the time the City of San Diego filed its complaint against Senn and the other Holistic Café defendants, the City improperly disqualified UCV. This argument did not give the City the opportunity to address UCV's contention, first raised in the trial court, that its regulation did not apply to the sale of medicinal marijuana. Thus, we lack authority to consider the argument.

Even if we were to conclude the issue was encompassed within the arguments UCV made in the administrative proceeding, we would agree with the trial court that the disqualifying regulation, Chula Vista Municipal Code section 5.19.050, subdivisions (A)(5)(f) and (g), does not exclude the sale of medicinal cannabis in the manner UCV contends. UCV asserts that the City's regulations "make clear that 'commercial' cannabis activity does not include 'medicinal cannabis' " because "section 5.19.020 separately defines 'commercial' and 'medicinal cannabis' and 'medicinal cannabis product,' " and " 'the City's licensing scheme for commercial cannabis activities expressly prohibits commercial cannabis storefronts from selling medicinal cannabis and products.' "

Again, UCV's interpretation of the regulations is too narrow. Consistent with California's Uniform Controlled Substance Act (Health & Saf. Code, § 11018) and Medicinal and Adult Use Cannabis Regulation and Safety Act (Bus. & Prof. Code, § 26001, subd. (e)), the Chula Vista Municipal Code's definitional provision, section 5.19.020, defines "Cannabis" as "all parts of the Cannabis sativa Linnaeus, Cannabis indica, or Cannabis

19

ruderalis, whether growing or not; the seeds thereof; the resin, whether crude or purified, extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin. 'Cannabis' also means the separated resin, whether crude or purified, obtained from cannabis."

As stated, the provision defines "Commercial Cannabis Activity" as "the commercial Cultivation, possession, furnishing, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery or sale of Cannabis or Cannabis Products." (Chula Vista Mun. Code, § 5.19.020.) The terms "sale" and "sell" are defined as "any transaction whereby, for any consideration, title to Cannabis or Cannabis Products is transferred from one person to another." (*Ibid.*; see also Bus. & Prof. Code, § 26001, subd. (au).) "Medicinal Cannabis" is defined as "Cannabis or a Cannabis Product for use pursuant to the Compassionate Use Act of 1996 (Proposition 215), found at California Health and Safety Code Section 11362.5, by a medicinal cannabis patient in California who possesses a physician's recommendation." (Chula Vista Mun. Code, § 5.19.020; Bus. & Prof. Code, § 26001, subd. (a).)

Under these regulations, "Medicinal Cannabis" is a subset of "Cannabis," not, as UCV argues, a different category altogether. Additionally, the sale or transfer of medicinal cannabis is not excluded from commercial cannabis activity. As the City and real parties point out, this understanding of the regulations is also supported by the existence of "M-Licenses," which are "a State License for Commercial Cannabis Activity involving Medicinal Cannabis." (Chula Vista Mun. Code, § 5.19.020; see also Bus. & Prof. Code, § 26001, subd. (af).) Under the Chula Vista Municipal Code, "Commercial Cannabis Activity" embraces both medicinal and non-

20

medicinal licenses: " 'State License' means a License issued by the state of California, or one of its departments or divisions, under State Laws to engage in Commercial Cannabis Activity. License includes both an 'A-license' (adult use) and an 'M-license' (medicinal use), as defined by State Laws, as well as a testing laboratory license." (Chula Vista Mun. Code, § 5.19.020.)

UCV also argues that the Chula Vista Municipal Code prohibition on storefront retailers selling medicinal cannabis means the sale of medicinal cannabis is not commercial cannabis activity. We disagree. This is a qualification on the activities of storefront retailers, not a method to determine whether a certain prior activity by a license applicant is disqualifying. The distinction asserted by UCV does not exist in the Chula Vista Municipal Code. As the trial court found, UCV does not "identify any language which would exclude the sale [of] medicinal cannabis from being subsumed into the definition of commercial cannabis activity. The fact that other sections are specific to medicinal marijuana does not exclude it from rules which have broader application."

### III

### *The Trial Court Did Not Abuse Its Discretion*

UCV next asserts that the trial court abused its discretion by denying its request for judicial notice of documents concerning other rejected applicants that UCV obtained through a Public Records Act request. In the same section of its brief, it argues that the City abused its discretion because it did not choose the most qualified applicant and did not make "additional factual findings to demonstrate its reasons to reject" UCV's application.

With respect to the request for judicial notice, we do not agree the trial court's failure to grant the request was error. " 'The general rule is that a hearing on a writ of administrative mandamus is conducted solely on the

21

record of the proceeding before the administrative agency. [Citation.]' [Citation.] Augmentation of the administrative record is permitted only within the strict limits set forth in section 1094.5, subdivision (e) which provides as follows: 'Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case.' " (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101 (*Pomona Valley*).)

"In the absence of a proper preliminary foundation showing that one of the exceptions noted in section 1094.5, subdivision (e) applies, it is error for the court to permit the record to be augmented. [Citation.] Determination of the question of whether one of the exceptions applies is within the discretion of the trial court, and the exercise of that discretion will not be disturbed unless it is manifestly abused." (*Pomona Valley, supra*, 55 Cal.App.4th at p. 101.)

UCV asserts the trial court abused its discretion by not taking judicial notice of rejection letters that the City sent to other applicants and written decisions of the City's hearing officers in two appeals by other applicants. The rejection letters all predate UCV's hearing on June 10, 2020, while the appeal decisions are dated in July and August 2020. UCV's briefing does not explain how these documents are relevant to the issues presented here or why the letters could not have been sought before UCV's appeal to the City.

22

For these reasons, the trial court did not abuse its discretion by denying UCV's request that it take judicial notice of the documents.[7]

We also see no merit in UCV's assertion that the City abused its discretion by "failing to exercise any discretion by rejecting [UCV]'s application without making additional factual findings to demonstrate its reasons to reject the application." The City's rejection letter stated the reason for its denial. UCV's argument amounts to a request for this court to overrule the City's proper exercise of its discretionary authority. That is not our role. (See *Daily Journal Corp. v. County of Los Angeles (*2009) 172 Cal.App.4th 1550, 1555 ["Although a court may order a government entity to exercise its discretion in the first instance when it has refused to act at all, the court will not 'compel the exercise of that discretion in a particular manner or to reach a particular result.' "].)

IV

*UCV Has Not Shown Its Due Process Rights Were Violated*

UCV argues it was deprived of a fair appeal of the City's rejection of its application because the hearing officer's advisor, Simon Silva, was a City Attorney and another City Attorney, Megan McClurg, served as counsel for the City in the proceeding. Specifically, UCV argues that the City was required to show evidence that it took sufficient screening measures to separate Silva and McClurg. UCV also contends McClurg's representation of the City was unfair because she was involved in drafting the cannabis regulations at issue.

---

[7] We likewise deny UCV's request for judicial notice of the same documents, and of a published list of cannabis business applicants downloaded from chulavista.gov.

23

## A

"Absent a financial interest, adjudicators are presumed impartial. [Citations.]  To show nonfinancial bias sufficient to violate due process, a party must demonstrate actual bias or circumstances ' "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." ' [Citation.]  The test is an objective one. [Citations.]  While the 'degree or kind of interest … sufficient to disqualify a judge from sitting "cannot be defined with precision" ' [citation], due process violations generally are confined to 'the exceptional case presenting extreme facts.' " (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 219 (*Today's Fresh Start*).)

"[A] party seeking to show bias or prejudice on the part of an administrative decision maker [must] prove the same with concrete facts: ' "Bias and prejudice are never implied and must be established by clear averments." [Citation.]  Indeed, a party's unilateral perception of an appearance of bias cannot be a ground for disqualification unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals.' " (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1237.)

## B

UCV argues that the City has a burden to show it took sufficient efforts to screen McClurg from Silva, and that it failed to do so.  UCV's argument is not supported by the law.  Rather, the burden is on the party asserting its rights were violated to show bias.  "[A]n agency's participation in an accusatory portion of administrative proceedings need not give rise to constitutional concerns." (*Today's Fresh Start, supra*, 57 Cal.4th at p. 221.)

24

" '[B]y itself, the combination of investigative, prosecutorial, and adjudicatory functions within a single administrative agency does not create an unacceptable risk of bias and thus does not violate the due process rights of individuals who are subjected to agency prosecutions.' " (*Ibid.*) "To prove a due process violation based on overlapping functions thus requires something more. '[T]he burden of establishing a disqualifying interest rests on the party making the assertion.' " (*Ibid.*)

"That party must lay a 'specific foundation' for suspecting prejudice that would render an agency unable to consider fairly the evidence presented at the adjudicative hearing [citation]; it must come forward with 'specific evidence demonstrating actual bias or a particular combination of circumstances creating an unacceptable risk of bias' [citations]. Otherwise, the presumption that agency adjudicators are people of ' "conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances" ' will stand unrebutted." (*Today's Fresh Start, supra*, 57 Cal.4th at pp. 221–222.)

UCV does not point to any specific evidence to support its assertion that the hearing officer was biased against it. Instead, UCV argues that the City failed to establish that it sufficiently separated Silva and McClurg. This argument turns the law on its head, and provides no basis for this court to find UCV's due process rights were violated. UCV relies on *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810 (*Quintero*) to support its assertion that the City had the burden to show it adequately separated McClurg and Silva for purposes of the appeal hearing.

*Quintero*, criticized in *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 740, fn. 2, held that due process was violated by the appearance of bias where a deputy city attorney acted as

25

prosecutor of the plaintiff, a discharged city employee, before the city's personnel board and concurrently represented the personnel board in civil mandate proceedings of other discharged employees. (*Quintero, supra*, 114 Cal.App.4th at p. 812.) *Quintero* does not support UCV's argument. Unlike *Quintero*, which involved a single attorney simultaneously representing the City both as a prosecutor and advisor, the two city attorneys here permissibly occupied separate roles. Further, UCV presented no specific evidence that McClurg and Silva were insufficiently screened for purposes of the hearing.

We also decline to reach the merits of UCV's assertion that because McClurg gave presentations to the City Council, including Halbert, on the local regulation of cannabis in 2017 and 2018, that Halbert was unconstitutionally biased against UCV. As an initial matter, UCV did not present this argument in the administrative proceedings, resulting in forfeiture of the argument. (*Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 787.)

In addition, UCV has failed to provide a basis for this court to consider the evidence it contends shows bias. The documents UCV references are the minutes of four City Council meetings held on August 3, 2017, October 26, 2017, December 12, 2017, and February 27, 2018. The documents are not part of the administrative record, and were presented by UCV in a request for judicial notice that was denied by the trial court. In this court, UCV relegates the evidentiary issue to a footnote in its opening brief. It states without any elaboration or argument that the documents are "admissible pursuant to Code of Civil Procedure section 1094.5, subdivision (e)."

As discussed, this exception to the general rule that reviewing courts are bound to the confines of the administrative record applies only where the party seeking to augment the record establishes that the new evidence, "in

26

the exercise of reasonable diligence, could not have been produced" or "was improperly excluded at the hearing." (Code Civ. Proc., § 1094.5, subd. (e).) UCV makes no attempt to show why it could not have included its argument and the documents it now relies on (all predating the hearing) in the administrative proceeding. Accordingly, we decline to consider this extra-record evidence and reject UCV's argument that the hearing officer was unconstitutionally biased based on McClurg's alleged involvement in the City's cannabis regulations.[8] (See *Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [It is appellant's burden "to present an adequate record for review" and failure to do so requires affirmance.].)

## DISPOSITION

The judgment is affirmed. The costs of appeal are awarded to the City of Chula Vista and Real Parties in Interest.

McCONNELL, P. J.

WE CONCUR:

IRION, J.

DO, J.

---

[8] UCV's separate request for judicial notice here includes the minutes. As the basis for the request, UCV states that the documents are relevant to "demonstrate that the City Attorney's Office improperly served [UCV] with notice of the hearing." UCV, however, does not argue reversal is required based on improper notice. We deny the request for judicial notice of the minutes as irrelevant and on the additional grounds the documents are outside the administrative record.

27